LAWRENCE G. WASDEN
ATTORNEY GENERAL
STATE OF IDAHO

Brady J. Hall (ISBN 7873)
Special Deputy Attorney General
MOORE ELIA KRAFT & HALL, LLP
Post Office Box 6756
Boise, Idaho 83707
Telephone: (208) 336-6900
Facsimile: (208) 336-7031
brady@melawfirm.net

*Attorneys for Defendants Tim McKay,
Jay Christensen, Elizabeth Chappell,
and Lt. Klinton Hust*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| KENT WILLIAMS, | ) | Case No. 1:20-cv-000008 |
| Plaintiff, | ) ) ) | **DEFENDANTS' RESPONSE TO PLAINTIFF'S EMERGENCY MOTION FOR TRO [DKT. 29]** |
| v. | ) ) ) | |
| ASSOCIATE WARDEN MCKAY, et al. | ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

COME NOW Defendants Tim McKay, Jay Christensen, Elizabeth Chappell, and Klinton Hust (hereinafter "Defendants"), by and through their counsel of record, hereby provide this response to Plaintiff Kent Williams' "Emergency TRO; Sanctions[;] Plaintiff to be brought before the Court injunction preventing Defendants (IDOC) Denying Plaintiff access to this or any Court" (hereinafter "Motion for TRO") (Dkt. 29). For the following reasons, Defendants respectfully submit that the Court should deny Mr. Williams' instant motion.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S EMERGENCY MOTION FOR TRO [DKT. 29] - 1**

## RELEVANT BACKGROUND

Mr. Williams, an inmate incarcerated at the Idaho State Correctional Center (ISCC), commenced this lawsuit on January 6, 2020. (Dkt. 2). Despite claims he has repeatedly been deprived of the right to access the courts, Mr. Williams has since filed multiple letters and pleadings with this Court including, but not limited to, a motion to amend his complaint (Dkt. 18); a consent to magistrate judge (Dkt. 22); a motion for entry of default (Dkt. 23); a motion for discovery sanctions (Dkt. 25); this Motion for TRO (Dkt. 29); and an "addendum" to the Motion for TRO (Dkt. 31).

On July 10, 2011, Mr. Williams threatened to murder a security officer and then commit suicide. (Declaration of Dr. Walter Campbell, Ph.D. ("Campbell Decl."), ¶ 6). Pursuant to IDOC policies and practices, Mr. Williams was transferred to suicide watch, which is a crisis intervention tool designed to restrict access to means of self-harm in a safe environment while mental health professionals assess an individual's suicide risk and develop a plan to reduce the inmate's suicidal ideations. (Campbell Decl., ¶ 4-5) Accordingly, an inmate is provided very little property, and is prohibited from having pens, pencils, and paper because the same can be used to inflict self-harm or interfere with the ability of staff to safely monitor the inmate. (Campbell Decl., ¶ 4) (Declaration of David Dietz ("Dietz Decl.," ¶¶ 4-5).

IDOC has a process for an inmate to receive additional property while on suicide watch, including pens, paper, and legal materials. (Campbell Decl., ¶ 5). An inmate may be provided with additional property if mental health professionals, in consultation with security staff, determine that it is safe and appropriate to provide the inmate with the property. *Id.* Mr. Williams requested his legal materials, but he refuses to communicate with mental health staff or participate in any risk assessments that, in turn, will determine if it is safe and appropriate to provide him with

**DEFENDANTS' RESPONSE TO PLAINTIFF'S EMERGENCY MOTION FOR TRO [DKT. 29] - 2**

additional property. (Campbell Decl., ¶¶ 6-8) (Dietz Decl., ¶ 5). Due solely to Mr. Williams' refusal to cooperate with mental health professionals, staff are unable to complete the requisite assessments to determine if Mr. Williams can be provided with additional property, including the legal materials he requests. (Campbell Decl., ¶ 8).

## LEGAL STANDARDS

It appears Mr. Williams is seeking a temporary restraining order to force IDOC to provide him with all of his legal materials while he is on suicide watch. Temporary restraining orders are governed by Federal Rule of Civil Procedure (FRCP) 65(b) which requires the moving party to show that "it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party ... can be heard in opposition...." Under FRCP 65(b) and Ninth Circuit case law, a plaintiff may obtain a temporary restraining order and preliminary injunction only where he or she can "*demonstrate* immediate threatened injury." *See, e.g., Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir.1988) (emphasis in original).

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical." *Reed v. Nevada Dep't of Corr.*, 691 F. App'x 843 (9th Cir. 2017) (internal quotation marks and citations omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)). A preliminary injunction's basic function is "to preserve the status quo ante litem pending a determination of the action on the merits." *See Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980); *see* Fed. R. Civ. P. 65.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S EMERGENCY MOTION FOR TRO [DKT. 29] - 3**

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). A "possibility" of irreparable harm is insufficient; irreparable injury must be "likely" in the absence of an injunction. *Winter*, 555 U.S. at 24. Moreover, where the moving party seeks a mandatory preliminary injunction granting relief that goes well beyond the status quo as it exists during the litigation, courts should be "extremely cautious." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984). The party must also show that "extreme or very serious damage will result," not simply that irreparable harm is likely. *Maryln Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (citations and quotations omitted). A mandatory injunction "goes well beyond simply maintaining the status quo pendente lite and is particularly disfavored." *Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015). The "district court should deny such relief unless the facts and law clearly favor the moving party." *Id.* In plain terms, mandatory injunctions should not issue in "doubtful cases." *Id.*

## DISCUSSION

Mr. Williams has failed to satisfy the extremely high burden required for a temporary restraining order seeking a mandatory preliminary relief. Mr. Williams has not clearly established that he will prevail on the merits of his claim that he is currently being deprived of his constitutional right to access the courts. A prison inmate is entitled to meaningful access to the courts under the fourteenth amendment. *Bounds v. Smith,* 430 U.S. 817, 822 (1977). However, a restriction of that right is permissible if it is related to legitimate penological interests. *Turner v. Safley,* 482 U.S. 78, 89 (1987). This relaxed standard "is necessary if prison administrators and not the courts, are to make the difficult judgments concerning institutional operations." *Casey v. Lewis*, 4 F.3d 1516,

**DEFENDANTS' RESPONSE TO PLAINTIFF'S EMERGENCY MOTION FOR TRO [DKT. 29] - 4**

1520 (9th Cir. 1993) (citations and quotations omitted). A prison official's concern for prison security is entitled to significant deference. *Id*. at 1521. A prison official need merely put forward a legitimate governmental interest and provide some evidence that the interest put forward is the actual reason for the regulation. *Id*. at 1520-21.

*Turner* identifies four factors relevant in determining the reasonableness of prison policies: (1) whether there is a valid, rational connection between the prison policy and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right; (3) the impact that accommodation of the constitutional right will have on guards, on other inmates, or on the allocation of prison resources; and (4) whether the regulation or policy is an "exaggerated response" to prison concerns. 482 U.S. at 89–90. The burden is on the inmate to show that the challenged regulation is unreasonable under *Turner*. Casey, 4 F.3d at 1520 (9th Cir. 1993).

Here, IDOC's policies and practices exist solely to protect inmates like Mr. Williams from self-harm and the Court should afford IDOC significant deference in its efforts to operate a safe and secure institution. IDOC has a process to evaluate whether additional property can be provided to an inmate on suicide watch, but Mr. William's refuses to cooperate in that process or to engage with mental health professionals seeking to identify his level of risk and remediate the same. Until Mr. Williams cooperates with an assessment, it cannot be determined if the property Mr. Williams' requests can be safely provided or if there are any other alternative methods to provide Mr. Williams access to needed legal materials. To force IDOC to deviate from the established practice would reward Mr. Williams' uncooperative behavior, frustrate the primary goals of suicide watch, and undermine IDOC's ability to consistently apply policies that further the overarching goal of operating secure, safe, and orderly prisons.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S EMERGENCY MOTION FOR TRO [DKT. 29] - 5**

Mr. Williams has also not established the other essential elements of a mandatory preliminary injunction. For example, Mr. Williams has not established that "extreme or very serious damage will result" due to application of IDOC's policy preventing inmates on suicide watch from receiving potentially harmful property prior to a risk assessment. Mr. Williams has not identified any impending deadlines or articulated how IDOC's policy has prevented him from communicating with his court-appointed attorney in the state court proceeding.[1] Nor does it appear that Mr. Williams has failed to receive any legal mail. Any interruption to Mr. Williams' ability to effectively prosecute his lawsuits is the result of his repeated failure to cooperate with mental health professionals who eagerly await the opportunity to assess his risk and determine what property and legal materials are safe and appropriate to provide him. Further, a balancing of the equities tips in favor of IDOC's and the public's interests that prisons remain safe and secure facilities where inmates are also not permitted to manipulate the rules at the expense of security.

## CONCLUSION

IDOC is sensitive and supportive of Mr. Williams' right to have meaningful access to the courts. Mr. Williams will continue to be apprised of legal mail received. If Mr. Williams has any impending court deadlines, then he is encouraged to notify IDOC's paralegal and to request IDOC provide him with accommodations or assistance that is necessary to comply with such deadlines while he remains on suicide watch. However, Mr. Williams' desire for unfettered access to his property, including pens, paper, and other unspecified legal materials, must not be allowed to trump IDOC's legitimate interests in protecting Mr. Williams from self-harm, assessing his risk of

---

[1] The docket in Mr. Williams' post-conviction proceeding, *Kent Williams v. State of Idaho*, CV01-18-20013, evidences that Mr. Williams is represented by counsel, John Charles DeFranco. On July 8, 2020, the court in that case entered a Notice of Intent to Dismiss. On August 11, 2020, Mr. DeFranco filed a response. The court has not yet entered an order dismissing that action and it does not appear there are currently any deadlines governing the filing of further pleadings or a notice of appeal.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S EMERGENCY MOTION FOR TRO [DKT. 29] - 6**

harm, and developing a plan that reduces his suicidal ideations so he can return to general population. If Mr. Williams wishes to have greater access to his legal materials, then he is encouraged to cooperate with mental health professionals so staff can determine if providing him with additional property is safe and appropriate.

DATED this 4th day of September, 2020.

MOORE ELIA KRAFT & HALL, LLP

*/s/ Brady J. Hall*
Brady J. Hall
Attorneys for Defendants *Tim McKay, Jay Christensen, Elizabeth Chappell, and Lt. Klinton Hust*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 4th day of September, 2020, I caused to be served a true and correct copy of the foregoing document, by the method indicated below, and addressed to the following:

| Kent Williams #119473 | __x__ U.S. Mail, postage prepaid |
| ISCC | __x__ Hand Delivered |
| PO Box 70010 | _____ Overnight Mail |
| Boise, ID 83707 | _____ Facsimile Transmission |
| | _____ E-Mail |

*Pro Se Plaintiff*

*/s/ Brady J. Hall*
Brady J. Hall

**DEFENDANTS' RESPONSE TO PLAINTIFF'S EMERGENCY MOTION FOR TRO [DKT. 29] - 7**