LAWRENCE G. WASDEN
ATTORNEY GENERAL
STATE OF IDAHO

Brady J. Hall (ISBN 7873)
Special Deputy Attorney General
MOORE ELIA KRAFT & HALL, LLP
Post Office Box 6756
Boise, Idaho 83707
Telephone: (208) 336-6900
Facsimile: (208) 336-7031
brady@melawfirm.net

*Attorneys for Defendants Tim McKay,
Jay Christensen, Elizabeth Chappell,
and Lt. Klinton Hust*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KENT WILLIAMS,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ASSOCIATE WARDEN MCKAY, et al.<br><br>　　　　Defendants. | Case No. 1:20-cv-000008<br><br>**DECLARATION OF WALTER CAMPBELL, Ph.D** |

I, Dr. Walter Campbell, Ph.D., hereby declare as follows:

1.　　I am over the age of eighteen and am competent to testify to the matters herein. I make this declaration upon my personal knowledge.

2.　　I am a licensed psychologist and maintain a professional license with the State of Idaho. I received my Ph.D. in Counseling Psychology and my Masters of Sciences degree in Counseling and Counselor Education, both from Indiana University. I am a member of the American Psychological Association and Idaho Psychological Association.

**DECLARATION OF WALTER CAMPBELL, Ph.D - 1**

3. I am employed with the Idaho Department of Correction (IDOC) as the Chief Psychologist. I have been the Chief Psychologist at IDOC since September 17, 2016. As the Chief Psychologist at IDOC, I am responsible for the oversight of mental health programming, including the creation and approval of policies and procedures related to mental health services for prisoners housed in general population, restrictive housing, suicide watch, and specialized mental health treatment units. Prior to my employment with IDOC, I worked at three separate correctional facilities in Indiana where I was responsible for overseeing various mental health units and services.

4. As the Chief Psychologist for IDOC, I am very familiar with IDOC's policies and practices related to suicide watch. It is important to note that suicide watch is a crisis intervention tool which is primarily designed to restrict access to means of self-harm in a safe environment while mental health professionals assess an individual's acuity of suicidal ideation, ability to maintain a safety plan, and plan for return to general population. To accomplish the above purposes of suicide watch, IDOC policies and practices restrict an inmate's access to property. Usually, an inmate on suicide watch is only provided with a suicide-resistant sleep system, a smock, and a mattress. Inmates on suicide watch are usually not provided access to a pen, pencil, or paper as the same can be used to inflict self-harm, interfere with the ability of staff to safely monitor the inmate, and distract from the primary purposes of suicide watch.

5. IDOC policies and practices provide a process for an inmate on suicide watch to be provided with additional property, such as pens, paper, and legal materials. For example, IDOC standard operating procedure 315.02.01.001, titled Suicide Risk Management and Intervention, authorizes an inmate to receive additional property on suicide watch, but only after review and approval by a mental health professional who coordinates with the shift commander who is

**DECLARATION OF WALTER CAMPBELL, Ph.D - 2**

responsible for prison security. For a mental health professional to evaluate whether additional property can be safely and appropriately provided to an inmate on suicide watch, the inmate's mental stability and risks of self-harm must first be assessed. Such assessments require direct communication between the inmate and mental health professionals, and thus are heavily reliant on the cooperation and participation of the inmate. An inmate that refuses to speak with mental health professionals or withholds their cooperation cannot be assessed to determine if any additional property can safely and appropriately be provided to the inmate. To provide an inmate with additional property without completion of the assessments would be clinically irresponsible, violate important IDOC policies and practices, and expose IDOC to potential liability if the inmate were to use the property to commit self-injury.

6. I am familiar with Plaintiff Kent Williams. I also have access to and have reviewed Mr. William's mental health encounter notes, which are records of mental health professionals' interactions with Mr. Williams that are created contemporaneously with such encounters and are maintained in the regular course of IDOC business. On July 10, 2020, Mr. Williams was observed as being very agitated and angry. He told staff that he was homicidal and suicidal and stated that he would slit an officer's throat and then slit his own wrists. Pursuant to IDOC policy, and for the protection of staff and Mr. Williams, he was transferred to suicide watch. Mr. Williams has since repeatedly refused to speak with or cooperate with mental health professionals' attempts to evaluate his mental stability and complete a suicide risk assessment and safety plan. Mr. Williams' refusal to cooperate or communicate with mental health professionals has been documented daily in Mr. William's mental health encounter notes.

7. Due to Mr. William's continued refusal to cooperate or interact with mental health professionals, IDOC cannot complete the requisite assessments of Mr. Williams to determine his

mental stability and suicide risk. Likewise, mental health professionals cannot complete an evaluation of Mr. Williams, as required by IDOC policy and practice, to determine if it is safe and appropriate to provide Mr. Williams with additional property, including pens and paper, while he remains on suicide watch. Mental health professionals have worked to find creative ways to find a less restrictive placement environment for Mr. Williams while also ensuring his safety; however, Mr. Williams continues to return to suicide watch after expressing ongoing suicidal ideations.

8. I understand that Mr. Williams is demanding access to all of his legal materials, including pens and large amounts of paper, while on suicide watch. Because Mr. Williams will not cooperate with the required mental health assessments, mental health professionals cannot determine whether the property Mr. Williams requests can be safely introduced into his cell. Without Mr. William's cooperation and willingness to discuss his suicidality, I believe it is clinically inappropriate for any property to be introduced into Mr. Williams' housing quarters. Mental health professionals have worked to find creative ways to provide Mr. Williams with a less restrictive housing environment where he would have access to additional property, but Mr. Williams continues to state he has suicidal ideations to staff and then is returned to suicide watch. Upon his return to suicide watch, Mr. Williams continues to refuse to participate in any assessments or otherwise speak to any mental health professionals. Should Mr. Williams chose to cooperate with mental health professionals, and work cooperatively to develop a safety plan, then IDOC mental health professionals and security leadership can work to develop a plan that allows Mr. Williams access to additional property that is appropriate and clinically indicated for his own safety.

9. I declare under penal of perjury of the laws of the United States that the foregoing is true and correct.

DATED this 4th day of September, 2020.

                          */s/ Walter Campbell*
                          Walter Campbell

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of September, 2020, I caused to be served a true and correct copy of the foregoing document, by the method indicated below, and addressed to the following:

| | |
|---|---|
| Kent Williams #119473 | __x__ U.S. Mail, postage prepaid |
| ISCC | _____ Hand Delivered |
| PO Box 70010 | _____ Overnight Mail |
| Boise, ID 83707 | _____ Facsimile Transmission |
| | _____ E-Mail |
| *Pro Se Plaintiff* | |

                          */s/ Brady J. Hall*
                          Brady J. Hall