Craig H. Durham
FERGUSON DURHAM, PLLC
223 N. 6th Street, Suite 325
Boise, Idaho 83702
T: (208) 724-2617
F: (208) 906-8663
chd@fergusondurham.com

Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| KENT WILLIAMS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ASSOCIATE WARDEN McKAY et al.,<br><br>　　　　　Defendants. | Case No. 1:20-cv-00008-REB<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER** |

　　During an in-person visit on March 5, 2021, Plaintiff Kent Williams's appointed counsel learned that Williams had not eaten for days. His physical and mental health appeared to be worsening, and he is at risk of getting seriously ill or even dying. Williams told counsel that he has refused to eat primarily due to a combination of a "meal modification" diet that has been given to him and the unhygienic cell conditions in which he is required to eat.

1

To stabilize this situation, Plaintiff seeks an emergency temporary restraining order from this Court ordering IDOC defendants to immediately (1) provide Williams with the same standard food that is offered to the inmate population at IMSI and under the same conditions, (2) house him to a cell with hot water, soap, and a flushable toilet, (3) allow him to use a standard-issue toothbrush to brush his teeth, and (4) any other relief the Court deems necessary and proper. Plaintiff's counsel contacted counsel for IDOC, expressing his concerns about Williams's status and asking IDOC to implement these or similar accommodations. IDOC declined.

This temporary relief should maintain the status quo and prevent further risk of harm to Williams's health until the Court can take up the broader access to courts issue. On that issue, Williams seeks leave to file an amended motion for a preliminary injunction with an expedited briefing schedule.

**BACKGROUND FACTS**

In July of 2020, IDOC officials put Kent Williams on a form of "suicide watch" because of threats that he had made to harm himself or others. (Declaration of Counsel, ¶10.) He was assigned to Unit A at ISCC, the restrictive housing unit at that facility. (*Id*.)

Since then, Williams has been locked down under something like a continual suicide watch. He is in a cell alone 24 hours a day, with no opportunity for out-of-cell recreation or dayroom time. (*Id*. at ¶¶ 11-12.) The lights stay on all day and all night, disrupting his sleep. (*Id*. at ¶ 15.) He has almost no access to personal property, which

includes his legal property. (*Id*. at ¶¶ 13-14.) He has no standard prison clothing – only a stiff "safety smock" – and he has sat naked in his cell. (*Id*.) He also has no books, magazines, puzzles, TV, radio, or even access to phone calls or emails to friends and family. (*Id*.) At times, he was given small and random privileges or property, like a plastic toothbrush – depending on the generosity or ignorance of individual staff members – only to have other staff take them away. (*Id*. at ¶¶ 16-18.)

In August of 2020, Williams filed an emergency motion for a temporary restraining order, with supplements, setting out these conditions and claiming he could not access the court to litigate this case. (Dkt. 29, 65, 84, 85.) The Court held a telephonic hearing on the motion in October and appointed pro bono counsel to assist in January of 2021. (Dkt. 42.) It referred the matter to Judge Dale, who presided over a settlement conference on February 18, which was unsuccessful. (Dkt. 82.)

Around the time of the settlement conference, Williams began to act out in response to what he viewed as the deteriorating condition of his meals and the arbitrary confiscation of the small toothbrush he had for his dental hygiene. (Declaration of Counsel, ¶ 20; *see also* Dkt. 83, incident reports from IDOC.) He spread his waste in his cell and on the opening in the cell door. (*Id*.; Dkt. 83.) IDOC responded by giving him Nutraloaf for each meal, which is a brown, unappetizing hunk of processed food. (*Id*.)

On February 22, IDOC moved Williams from ISCC to the Idaho Maximum Security Institution. (Declaration of Counsel, ¶ 23.) There, he was put in quarantine in

3

the "medical unit," ostensibly per Covid-19 protocols. (*Id*. at ¶ 25.) He is still locked down 24 hours a day by himself, but these housing conditions are worse than they were at ISCC. For instance, Williams does not control the flushing of his own toilet; only a correctional officer can flush the toilet by pushing a button outside of his cell. (*Id*. at 27.) Feces and urine might sit in the toilet a few feet away for a considerable period. (*Id*.) Williams also does not have hot water in his cell. (*Id*. at 28.) He has no soap or other sanitizing product. (*Id*.) His meals are no longer Nutraloaf, but they are small and cut up as finger food, with paper utensils, as a modification because of his "suicidal" status. (*Id*. at ¶ 29.) In short, if he eats, he must do so with his hands in what essentially amounts to a dirty bathroom with no ability to clean himself. (*Id*. at ¶ 30.)

Admittedly, Williams has again acted out. He has again defected and urinated on the floor. (*Id*. at ¶ 31.) And now he has refused to eat. (*Id*. at ¶ 32.) He informed counsel he is doing this because he is being "treated like an animal." (*Id*.) He is getting weaker, and his mental state is worsening. (*Id*.)

IDOC personnel informed counsel that Williams may be moved to J Block, which is also a solitary confinement unit, after the 14-day quarantine period ends on March 9. (*Id*. at ¶ 33.) If he goes to J Block, he may get slightly better housing, such as a flushable toilet. This move is unclear, though, and IDOC has indicated that it may require that Williams first meet behavioral benchmarks. (*Id*.) And even if he is moved to a J Block cell with a flushable toilet, it is unlikely that he will get meals on the same terms as all

4

other inmates at IMSI, which has been one of the primary sources of his recent behavior and his health deterioration.

There is a good chance that if Williams's conditions of confinement improved even slightly, including having the dignity of eating the same meals as those not on "suicide watch" and having a flushable toilet, he would start eating again and stop his current poor conduct. Counsel has asked IDOC, through its counsel, to grant him these small privileges, but it has refused.

## LEGAL STANDARD

All parties have consented to a magistrate judge exercising jurisdiction (Dkt. 22), so the Court has the authority under Rule 65 of the Federal Rules of Civil Procedure to grant Williams this relief. Fed.R.Civ.P. 65(b). The Court can grant issue a temporary restraining order with or without notice to the opposing party up to 14 days before it turns into a preliminary injunction. Fed.R.Civ.P. 65(b)(2).

The legal standards for a TRO are "substantially identical" to those for issuing a preliminary injunction. *Stuhlbarg Intl. Sales v. John D. Brush Co.*, 240 F.3d 832, 839-40 (9th Cir. 2001). The moving party must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).

The Ninth Circuit also retains a sliding scale approach, in which "'a stronger showing of one element may offset a weaker showing of another.'" *hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 992 (9th Cir. 2019) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).

## DISCUSSION

Williams meets all parts of the *Winter* standard. First, he is likely to succeed on an Eighth Amendment conditions of confinement claim. IDOC has a duty to provide Williams with constitutionally adequate medical and mental health care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Williams has proffered ample evidence that the defendants have been deliberately indifferent to his mental health condition and, more recently, to his physical health. *See id.* (holding that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'").

IDOC has labeled Williams as suicidal, and yet it has put him in long-term isolating conditions that are well-known to *cause* mental illness and *increase* suicidality. *See* Craig Haney, *The Psychological Effects of Solitary Confinement: A Systematic Critique*, 47 Crime & Just. 365, 368 (2018). Perhaps the worst thing to do to someone who is suicidal is to isolate them and take all their property and privileges indefinitely. *See*, e.g., *Palakovic v. Wetzel*, 854 F.3d 209 (3d Cir. 2017) (stating a claim for relief under the Eighth Amendment because prison officials had placed a suicidal inmate "repeatedly" in

restrictive solitary confinement conditions). Suicide watch in custody under extreme deprivation is intended to be short-term, measured in hours or days, not months. *See*, CNN, "As officials investigate Jeffrey Epstein's death, here's what you should know about suicide watch in jail," (8/12/2019) at [https://www.cnn.com/2019/08/12/us/suicide-watch-jail](https://www.cnn.com/2019/08/12/us/suicide-watch-jail) ("it would be completely unreasonable and inhumane to keep an inmate who appears to be stable on suicide watch indefinitely.").

Here, Williams has been naked and alone in a tiny cinder-block cell for nearly eight months with incessant lighting, with nothing to distract his mind, no contact with friends and family, little contact with other humans, and no exercise. Internationally, solitary confinement of this sort for any period longer than 15 days is considered torture. "UN Standard Minimum Rules on the Treatment of Prisons (2015 Rev), The Nelson Mandela Rules," at [https://www.solitaryconfinement.org/un-nelson-mandela-rules](https://www.solitaryconfinement.org/un-nelson-mandela-rules). Predictably, Williams's mental and physical health has worsened. His present condition is precarious.

IDOC's persistent refrain throughout this case is that Williams is a management problem who won't cooperate with mental health clinicians, implying that he is responsible for the harsh conditions under which he is living. Though it is true that he has history of not cooperating, that does not absolve IDOC or its medical providers of their duty to care for him. Put another way, IDOC has a constitutional obligation to stop a slow-motion suicide. *See, e.g., Miranda v. Cnty. of Lake*, 900 F.3d 335 (7th Cir. 2018)

(holding that doctors at a county jail could be liable for not taking steps to prevent a mentally disturbed inmate from starving herself to death).

IDOC has used Williams's lack of cooperation as an excuse to take away his rights and privileges rather than figure out a way to treat what it claims is his suicidality. In IDOC's view, Williams holds the keys to the kingdom: if only he would work with IDOC clinicians so that he no longer has suicidal ideation, then he could get his rights and privileges back. This is a type of gaslighting that shifts responsibility for medical care from IDOC onto someone that it has deemed mentally unstable.

It is hardly unusual in a clinical setting for a psychiatric patient to be distrustful, uncooperative, or resistant. The solution is not for the clinician to throw up his or her hands and walk away. Or, worse, to punish the patient by placing them in a sensory depriving and disorienting environment. The answer must be to try something different, like *increasing* privileges that are reasonably safe and secure, *providing* access to legal materials and the courts, and *increasing* social contact with other inmates, friends, and family. IDOC is not taking any of these proactive steps to remedy the situation, and there is now a high risk of serious harm to Williams. He is likely to succeed on an Eighth Amendment claim.

There is also an immediate danger of irreparable harm to Williams in the absence of some type of Court relief. He has not eaten for days, has lost considerable weight,

and appears gaunt and weak. He refuses to eat under his current conditions. If something is not done to improve his living situation, he is at risk of dying.

The balance of harms tips sharply in his favor. Counsel believes that if Williams is simply given the basic dignity of having the same food under the same conditions that all other general population inmates have it (same mainline meal, not chopped up, with all wrappers intact, with a plastic spork, and in a cell where he can flush his own toilet and clean himself), he would start eating again. And, while this may seem a small issue to people outside of prison, having a workable toothbrush for daily oral care instead of a plastic thimble is vitally important to inmates.

If IDOC chooses, it could station a correctional officer or an inmate companion nearby while Williams eats his meal and brushes his teeth. He could then return all items. Giving these small privileges to Williams would impose a de minimis corresponding burden on IDOC.

Finally, the relief requested "serves the interests of the general public by ensuring that the government's . . . procedures comply with the Constitution. *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017)("Generally, public interest concerns are implicated when a constitutional right has been violated because all citizens have a stake in upholding the constitution.").

* * *

Kent Williams asks that the Court order the IDOC defendants to immediately provide him with the same food that other inmates receive under the same conditions, house him in a cell with a functioning toilet and hot water, and allow him to use a standard toothbrush. The Court should further expressly find that this relief meets the needs-narrowness-intrusiveness standard of the Prison Litigation Reform Act, 18 U.S.C. § 3626(a)(l)(A), in that it is narrowly drawn, extends no further than necessary to correct the violation of the federal right, and is the least intrusive means necessary to correct the violation of the federal right.

## CONCLUSION

The Court should grant the Motion. Williams further asks the Court to set an expedited briefing schedule for an amended motion for preliminary injunctive relief on the access to courts issue.

Submitted on this 9th day of March 2021.

*/s/Craig H. Durham*