LAWRENCE G. WASDEN
ATTORNEY GENERAL
STATE OF IDAHO

Michael J. Elia (ISBN 5044)
Special Deputy Attorney General
MOORE ELIA & KRAFT, LLP
Post Office Box 6756
Boise, Idaho 83707
Telephone: (208) 336-6900
Facsimile: (208) 336-7031
mje@melawfirm.net

*Attorneys for Defendants Tim McKay,
Jay Christensen, Elizabeth Chappell,
and Lt. Klinton Hust*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KENT WILLIAMS,<br><br>    Plaintiff,<br><br>v.<br><br>ASSOCIATE WARDEN MCKAY, et al.<br><br>    Defendants. | Case No. 1:20-cv-000008<br><br>**DEFENDANT'S RESPONSE TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER [DKT. 87]** |

COME NOW Defendants McKay, Chappelle, and Christensen by and through undersigned counsel of record, Moore, Elia & Hall, and hereby submit this Response to Plaintiff's Emergency Motion for Temporary Restraining Order ("Plaintiff's Third Motion for TRO") as follows:

### INTRODUCTION

Plaintiff Kent Williams continues to actively express suicidal ideology and threaten staff. Despite ongoing efforts to provide him mental health services which would ultimately result in

**DEFENDANT'S RESPONSE TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER - 1**

Plaintiff receiving the property and privileges he seeks by and through his Third TRO, Plaintiff refuses to indicate that he will not kill himself or assault staff. Plaintiff's conduct is likewise combative and exposes him to the risk of substantial harm that can only be remedied by the privilege restrictions currently in place. Plaintiff's privileges are restricted for his safety and the safety of other inmates and IDOC staff. Plaintiff's Third Motion for TRO fails because he has not demonstrated any likelihood of success on the merits of his Eighth Amendment Claims. He has identified no "objective" danger stemming from IDOC—imposed restrictions, and cannot demonstrate that any Defendant has been "deliberately indifferent." Moreover, none of the named Defendants has any authority or ability to provide him the relief he seeks since none of them is qualified to assess his mental health conditions for the purpose of changing his restrictions and, that notwithstanding, none of the named Defendants is employed at the correctional facility that currently has custody of Plaintiff. Even if he could demonstrate success the merits of his claims, the named Defendants have no authority over his housing status or privileges.

## BACKGROUND

On July 10, 2011, Plaintiff threatened to murder a security officer and then commit suicide. Declaration of Dr. Walter Campbell, Ph.D, Dkt. 32-2. ("Campbell Decl."), ¶ 6). Pursuant to IDOC policies and practices, Plaintiff was transferred to suicide watch, which is a crisis intervention tool designed to restrict access to means of self-harm in a safe environment while mental health professionals assess an individual's suicide risk and develop a plan to reduce the inmate's suicidal ideations. Second Declaration of Walter Campbell, ("Second Campbell Decl." ¶ 6). Under IDOC SOP 315.02.01.001 a clinician is responsible for making clinical decisions about property and privileges for inmates on suicide watch through the "suicide risk assessment"

tool. *Id.* This tool lays out suicide risk factors, allowing a clinician to assess for safety and make appropriate property/housing decisions. *Id*.

Accordingly, an inmate who expresses high levels of suicidal ideation is generally provided very little property, and is prohibited from possessing hard pens, pencils, and paper because the same can be used to inflict self-harm or interfere with the ability of staff to safely monitor the inmate. Campbell Decl., ¶ 4. Restricting a suicidal inmate's access to property is not punitive, but is done to restrict access to means of self-harm. Second Campbell Decl. ¶ 4. As such, in cases where an inmate is at high risk of suicide, clinicians prefer to implement the least "risky" food options possible by excluding food items which require hard utensils or plates as these items are commonly used as self-harm tools in prison. *Id*. Likewise, inmates have historically used functioning toilets in order to commit self-harm, and, as such, functioning toilets are not clinically recommended for individuals at high risk of suicide *Id*., ¶ 5. The same is true of long-handled toothbrushes, which are frequently used to create weapons and inflict self-harm. *Id*., ¶ 6.

With that in mind, IDOC has a process for an inmate to receive additional property while on suicide watch, including the items and food referenced above. *Id.* ¶ 4. An inmate may be provided with additional property, access to different meals, hot water, soap, a flushable toilet, and a toothbrush if mental health professionals, in consultation with security staff, determine that it is safe and appropriate to provide the inmate with the property. *Id*. This process requires direct communication between an inmate and mental health providers, and is designed to ensure the safety of suicidal inmates as well as those around them. *Id*. On that point, providing an inmate additional property without completion of these assessments would be clinically irresponsible, violate IDOC policy, and expose IDOC to liability if the inmate were to use the property to self-

**DEFENDANT'S RESPONSE TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER - 3**

injure. *Id.*

Plaintiff refuses to communicate with mental health staff or participate in any risk assessments that, in turn, would determine if it is safe and appropriate to provide him with additional property. *Id.* ¶ 4. Due solely to Plaintiff's refusal to cooperate with mental health professionals, staff are unable to complete the requisite assessments to determine if Plaintiff can be provided with additional property and the relief he requests. *Id.* Likewise, clinical staff has previously made modifications to Plaintiff's housing and property arrangements in an attempt to engage with him, but he continues to refuse to interact with clinical staff. Moreover, Plaintiff continues to threaten that he will commit suicide and assault staff—he has consistently made such threats since being placed on suicide watch. *Id.* When presented with less restrictive housing and privileges, Plaintiff has invariably ended up back on suicide watch after expressing suicidal ideations. *Id.*

Additionally, Plaintiff routinely spreads feces and urine throughout his cell, as well as inserting items, such as pens, into his rectum when given the chance. *See, e.g.,* Dkt. 71. Plaintiff also tears apart foam food trays and uses the pieces of the tray to clog his toilet. Plaintiff has refused soap when given the opportunity to use it. *Id.*, ¶ 5. Plaintiff also has the ability to have his toilet flushed every fifteen minutes, if he chooses, when he receives a wellness check, and it is not, thus, necessary for him to eat his meals in the presence of urine or feces. *Id.* Based on these behaviors, along with IDOC Staff having exhausted all avenues of communication with Mr. Williams, he was transferred to IMSI, which was a more appropriate facility for him. *Id.*, ¶ 9.

It is clear that Plaintiff is *capable* of communicating, but chooses not to do so. It is Defendants understanding that, on or around March 11, 2021, Plaintiff's cell was being modified to provide hot water, and Plaintiff decided to cooperate to a sufficient extent that he was

**DEFENDANT'S RESPONSE TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER - 4**

provided silverware and ate dinner. In fact, Defendants believe Plaintiff is currently *not* on suicide watch, but has been downgraded to "close watch." Whether he can maintain this status remains to be seen, but these facts demonstrate that Plaintiff is capable of communicating with mental health staff if he so chooses.

Ultimately, Plaintiff has a right to refuse medical treatment under NCCHC standard MH-I-04 and the APA code of ethics, and has apparently chosen to exercise that right. Second *Id*., ¶ 10. On that point, Plaintiff's condition does <u>not</u> arise to the level of involuntary medication such that he could be treated without consent. *Id*. IDOC staff has repeatedly expressed a desire for Plaintiff to join the prison population, and has gone above and beyond normal procedure on multiple occasions to accommodate him, only to see their efforts rejected by Plaintiff. *Id*. ¶¶ 11-12. Based on Plaintiff' continuing refusal to submit to mental health assessment and his ongoing threats of self-harm, mental health staff does not believe that the items and privileges sought by Plaintiff's Third TRO are clinically indicated at this time. *Id*.

Further, as of March 9, 2021, when Plaintiff filed his Third Motion for TRO, he was housed at ISMI. See *Plaintiff's Third Motion for TRO* P. 3. None of the named Defendants is employed at ISMI or has any authority to determine or modify the housing status of individuals at ISMI. None of the named Defendants is qualified as a mental health or medical professional of any kind, none is qualified to perform mental health analyses on inmates, and none of the Defendants is in a position to question or reject the professional or medical opinions of IDOC medical and mental health staff. *Id*.

## LEGAL STANDARD

Temporary restraining orders are governed by Federal Rule of Civil Procedure (FRCP) 65(b) which requires the moving party to show that "it clearly appears from specific facts shown

**DEFENDANT'S RESPONSE TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER - 5**

by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party ... can be heard in opposition...." Under FRCP 65(b) and Ninth Circuit case law, a plaintiff may obtain a temporary restraining order and preliminary injunction only where he can "*demonstrate* immediate threatened injury." *See, e.g., Caribbean Marine Servs. Co. v. Baldridge,* 844 F.2d 668, 674 (9th Cir.1988) (emphasis in original).

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical." *Reed v. Nevada Dep't of Corr.*, 691 F. App'x 843 (9th Cir. 2017) (internal quotation marks and citations omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)). A preliminary injunction's basic function is "to preserve the status quo ante litem pending a determination of the action on the merits." *See Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980); *see* Fed. R. Civ. P. 65. Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). A "possibility" of irreparable harm is insufficient; irreparable injury must be "likely" in the absence of an injunction. *Winter*, 555 U.S. at 24.

Moreover, where the moving party seeks a <u>mandatory</u> preliminary injunction granting relief that goes well beyond the status quo as it exists during the litigation, courts should be "extremely cautious." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir.

**DEFENDANT'S RESPONSE TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER - 6**

1984). The party must also show that "extreme or very serious damage will result," not simply that irreparable harm is likely. *Maryln Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (citations and quotations omitted). A mandatory injunction "goes well beyond simply maintaining the status quo pendente lite and is particularly disfavored." *Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015). The "district court should deny such relief unless the facts and law clearly favor the moving party." *Id.* In plain terms, mandatory injunctions should not issue in "doubtful cases." *Id.* The PLRA states that a remedy shall extend no further than necessary to remedy the violation of the rights of a "particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1)(A). This means only that the scope of the order must be determined with reference to the constitutional violations established by the specific plaintiffs before the court. *Brown v. Plata,* 563 U.S. 493 (2011)

## ARGUMENT

Plaintiff's Third Motion for TRO should be denied for procedural and substantive reasons. Substantively, Plaintiff cannot demonstrate any likelihood of success on the merits of his claim that Defendants have been deliberately indifferent to him in violation of his Eighth Amendment right against cruel and unusual punishment. Procedural barriers include the fact that the named Defendants cannot provide Plaintiff the relief he seeks even if the Court orders it—Plaintiff is not currently housed in a place where any named Defendant can order changes to his housing and accommodations even if he were to prevail on his Motion. Additionally, Plaintiff's Third Motion for TRO asserts new claims under the Eighth Amendment which were not included with his original complaint and which are not brought by proper procedure under the PLRA.

I. **Plaintiff Cannot Demonstrate Any Likelihood of Success on the Merits of His Claims.**

In order to prevail on his Motion for a TRO, Plaintiff must demonstrate a likelihood that

**DEFENDANT'S RESPONSE TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER - 7**

he would prevail on his claim that Defendants violated his Eighth Amendment rights. As an initial matter, the standard regarding the validity of a prison regulation that allegedly impinges on an inmate's Constitutional rights is whether such a regulation is "reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89, (1987). The government has a legitimate penological interest in preventing an inmate's death, including by suicide. *See, e.g. Aamer v. Obama*, 742 F.3d 1023, 1041 (D.C. Cir. 2014) (holding that prison may lawfully force-feed inmates who engaged in hunger strike). Here, each deprivation identified in the TRO was authorized and/or required by IDOC SOP 315.02.01.001, and IDOC staff continues to act with the purpose of preventing Plaintiff's suicide. Plaintiff cannot, therefore, establish that the policy-in-action here was unlawful or that IDOC Staff acted unlawfully in following that policy, or that such conduct represents any actionable violation of his constitutional rights.

That aside, Plaintiff brings his claim under the Eighth Amendment for conditions of confinement or medical care. The applicable standard requires him make two showings in order to prevail: First, that the danger to the inmate is <u>objectively</u> serious, posing a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (emphasis added). Second, Plaintiff must show that Defendants had sufficiently culpable state of mind—one of 'deliberate indifference' to inmate health or safety. *Id*. Deliberate indifference requires that a prison official know of and disregard a substantial risk of serious harm to inmate health or safety. *Id*. at 837. The deliberate indifference standard is a <u>subjective</u> one. It is not enough that there was a danger of which a prison official objectively *should* have been aware. *Id*., at 838. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.,* at 837.

This means a prisoner must show more than "mere negligence" in order to demonstrate that a prison official was "deliberately indifferent." Thus, if a prison official should have been

**DEFENDANT'S RESPONSE TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER - 8**

aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1068 (9th Cir. 2014). Importantly, suicide is a "serious harm" and prison officials must take reasonable preventative steps when they are aware that there is a substantial risk that an inmate may attempt to take his own life. See *Hite v. Carson City*, 187 F.3d 647 (9th Cir. 1999).

In this case, Plaintiff has not identified an "objective" danger. Plaintiff's request for injunctive relief related to hot water is moot because his cell now provides hot water. With regard to his complaints about the types of food he is receiving, he asserts that IDOC staff gave him "unappetizing" Nutriloaf. To be sure, Nutriloaf is not appetizing, but neither does it present an objectively substantial risk of harm to Plaintiff. Nor do "finger foods" or "paper utensils." These things are not *preferential*, but they do not arguably create an objective risk of serious harm. They also fail to arise to the level of "irreparable harm" that Plaintiff must establish for the purpose of his TRO. As for the toilet which must be flushed by staff outside Plaintiff's cell, Plaintiff has the ability to request that the toilet is flushed every 15 minutes if he so chooses, and is certainly not required to spread urine and feces throughout his cell—to the extent that such conditions exist in his cell it could hardly be said to be the fault of IDOC staff, and the existence of a flush toilet would not cure Plaintiff's voluntary spread of bodily waste in his cell.

To the extent Plaintiff presents his own refusal to eat as a significant risk, he may correctly identify a substantial risk to of harm, albeit one that is actually and proximately caused by Plaintiff, himself, not Defendants. In any event, the solution would *not* be to provide Plaintiff

**DEFENDANT'S RESPONSE TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER - 9**

with more preferential foods, it would be to forcibly prevent Plaintiff from starving—a situation which no party wants. It is his clinician's opinion that providing Plaintiff the property and privileges identified in his TRO would, in and of themselves, present an objective and significant risk of serious harm to Plaintiff in light of his ongoing threats and refusal to communicate. Plaintiff has not satisfied the first part of the Eighth Amendment analysis.

As to the second part of the analysis, the question before the court is whether Plaintiff has demonstrated a likelihood of success in showing that Defendants were "deliberately indifferent." IDOC staff, including Defendants, reacted to Plaintiff's threat to commit suicide and murder prison staff by taking steps to protect Plaintiff's health. IDOC staff has specifically identified why the items he seeks through the TRO are not clinically indicated based on his high risk of suicide. This course of conduct cannot be "deliberately indifferent," and Plaintiff's argument amounts to nothing more than the fact that he disagrees with the clinical recommendations of his mental health treaters—something which fails to show "deliberate indifference" as a matter of law.

Truly, it would be "deliberately indifferent" to provide Plaintiff the relief he seeks, such as a tooth brush, for example, in light of his threats and actions, refusal to accept mental health treatment, and the reality that toothbrushes are commonly turned into weapons in prison. Prison officials are subjectively and objectively aware of the risk that allowing Plaintiff to have a toothbrush would constitute a substantial risk of serious harm to his safety, disregarding that risk would be textbook "deliberate indifference." Plaintiff's briefing makes it clear that he wishes to have additional food privileges, a running toilet, soap, and different housing conditions—IDOC staff also wants these things for Plaintiff. However, Plaintiff has refused each and every in-road he is presented, despite efforts to accommodate his conduct, and he continues to actively harm

**DEFENDANT'S RESPONSE TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER - 10**

himself, threaten suicide, and risk the safety of other inmates and staff around him. The truth is that Plaintiff, who asserts that he desires "the same food that other inmates receive under the same conditions" <u>is receiving the same food that other inmates receive under the same conditions</u>, and the actual and proximate cause of his lack of privileges is his own conduct.

Notably, Plaintiff's Third Motion for TRO does <u>not</u> include or argue the standard for "deliberate indifference." While it uses the phrase "deliberate indifference," Plaintiff cites non-legal sources, such as CNN in support of his primary argument that his treatment is "unreasonable" and there is a high risk of harm to Plaintiff—that it is "unreasonable" to keep an inmate who "appears to be stable on suicide watch indefinitely." Plaintiff's Third Motion for TRO, P. 7. As indicated, Plaintiff's conduct is anything but stable. However, the issue before the court is whether Plaintiff has demonstrated a likelihood of success on establishing that Defendants were "deliberately indifference" because they were *actually* aware of a significant risk that Plaintiff would suffer serious harm and consciously ignored that risk. Plaintiff has not satisfied that standard. Plaintiff's allegations, even if true, would not amount to "deliberate indifference" and he *cannot*, therefore, have demonstrated any likelihood of success even *before* considering Defendants' argument. As outlined above IDOC Staff, following standard procedures and took steps to *avoid* substantial risks to Plaintiff's health. Plaintiff cannot demonstrate that they consciously disregarded substantial risks to his health by deciding *not* to provide him with privileges and property which he would prefer, but which Plaintiff could employ to injure or kill himself, such as hard silverware, and his Third Motion for TRO fails.

## II. Plaintiff's Third Motion for TRO is Procedurally Barred.

Plaintiff's Third Motion for TRO should be rejected because it seeks injunctive relief, but does not "name the official within the entity who can appropriately respond to injunctive relief."

**DEFENDANT'S RESPONSE TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER - 11**

Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1127 (9th Cir.2013). If this Court were to grant the relief sought against the named Defendants, they would be unable to do so because none of them are employed at ISCC, where Plaintiff is currently incarcerated. In reality, it is not clear that any of the named Defendants would be able to implement the injunctive relief sought even if Plaintiff was housed at the facilities which employ Defendants. This is because decisions regarding suicide restrictions are made upon the expert opinions of medical and mental health staff under IDOC operating procedure, and the named Defendants are not in a position to recommend any modification to medical or mental health recommendations—the restrictions at question here are part of Plaintiff's treatment plan, not merely a matter of administrative operation. Ultimately, Plaintiff is driving the ship with regard to the restrictions to which he is subject and needs only communicate with mental health staff, something he refuses to do.

Defendants also note that the Initial Review Order does not identify any valid Eighth Amendment Claims against Defendants, and it does not appear that Plaintiff intended to bring such claims in his Complaint. To that extent, Plaintiff's Third TRO functionally presents new claims which likely do not satisfy the requirements of the PLRA. Ultimately, since the named Defendants would be unable to provide the relief requested, it makes sense that Plaintiff's Third TRO would be properly brought as a new action against the individuals who *could* provide that relief. On the other hand, since Plaintiff cannot satisfy his burden and demonstrate that he is entitled to a TRO, it makes little difference who is named as the subject of Plaintiff's Motion. Because his Motion fails substantively and procedurally, Plaintiff's Motion should be denied.

**DEFENDANT'S RESPONSE TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER - 12**

DATED this 15th day of March, 2021.

                              MOORE ELIA & KRAFT, LLP

                              */s/ Michael J. Elia*
                              Michael J. Elia
                              Attorneys for Defendants *Tim McKay,*
                              *Jay Christensen, Elizabeth Chappell,*
                              *and Lt. Klinton Hust*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of March, 2021, I filed the foregoing electronically through the CM/ECF system which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Craig H. Durham
FERGUSON DURHAM, PLLC
chd@fergusondurham.com

*Attorney for Plaintiff*

                                           */s/ Michael J. Elia*
                                           Michael J. Elia