LAWRENCE G. WASDEN
ATTORNEY GENERAL
STATE OF IDAHO

Michael J. Elia (ISBN 5044)
Special Deputy Attorney General
MOORE ELIA & KRAFT, LLP
Post Office Box 6756
Boise, Idaho 83707
Telephone: (208) 336-6900
Facsimile: (208) 336-7031
mje@melawfirm.net

*Attorneys for Defendants Tim McKay,
Jay Christensen, Elizabeth Chappell,
and Lt. Klinton Hust*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KENT WILLIAMS, <br><br> Plaintiff, <br><br> v. <br><br> ASSOCIATE WARDEN MCKAY, et al. <br><br> Defendants. | Case No. 1:20-cv-000008 <br><br> **SECOND DECLARATION OF WALTER CAMPBELL, Ph.D** |

I, Walter Campbell, Ph.D hereby declare as follows:

1.  I am over the age of eighteen and am competent to testify to matters herein. I make this declaration upon my personal knowledge.

2.  I previously provided testimony to this Court by way of my September 4, 2020 Declaration of Walter Campbell, Ph.D (Dkt. 32-2) and October 2, 2020 Supplemental Declaration of Walter Campbell, Ph.D (Dkt. 38).

**SECOND DECLARATION OF WALTER CAMPBELL, Ph.D - 1**

3.  I am a licensed psychologist and maintain a professional license with the State of Idaho. I received my Ph.D in Counseling Psychology and my Masters of Sciences degree in Counseling and Counselor Education, both from Indiana University. I am a member of the American Psychological Association and Idaho Psychological Association.

4.  Mr. Williams was moved to IMSI on February 23, 2021 to a suicide watch cell due to his ongoing and escalating behaviors as a safety measure. I understand that Mr. Williams is demanding that he be given the same food that general population inmates receive at IMSI and under the same conditions that they receive it (in cell, same quantity of food, not otherwise tampered with or cut, all wrappers intact, and with plastic utensils).

A licensed mental health clinician is responsible to determine what property a resident receives while on suicide watch, including the type of meal and associated items (like utensils, plates, etc.) In cases where suicide risk is high or unknown, the least risky option is preferred, foods that do not require utensils or plates, as these items are not commonly used in self-harm. The clinician's decision to allow property should always be based on a clinical assessment of safety – and Mr. Williams' ongoing refusal to participate in a clinical assessment indicates that a safer option should continue to be utilized.

Our IDOC SOP 315.02.01.001, states a clinician is responsible to make clinical decisions about access to property through the "suicide risk assessment" tool. SOP 315.02.01.001 lays out suicide risk factors, allowing a clinician to assess for safety and make appropriate property/housing decisions. These decisions are made for the purpose of restricting suicidal inmates' access to means of self-harm, and restrictions are not implemented for any punitive purpose. These assessments require direct communication between inmates and mental health providers, and providing a high-risk inmate additional property and privileges without conduct a

**SECOND DECLARATION OF WALTER CAMPBELL, Ph.D - 2**

safety assessment would be clinically irresponsible, violate IDOC policy, and expose IDOC to liability if an inmate were to use that property to inflict self-harm.

While I understand Mr. Williams would prefer certain meals, it would most definitely not be a clinically appropriate decision to allow him access to items frequently used for self-harm without a clinical assessment. We have previously made modifications to his housing and property situations in an attempt to engage him, he has continued to refuse to interact with us or claimed ongoing suicidality following these efforts, giving us very little clinical reason to believe making these accommodations would result in increased engagement.

5. Mr. Williams demands that IDOC house him in a cell that has soap, hot water, and a functioning toilet that can be flushed by the inmate.

   a. The hot water issue was addressed. The toilet's flush system is a feature of this room he is housed in, which is used for a wide variety of mental health concerns – some of which require enhanced control of water flow. Mr. Williams can request his toilet be flushed at a minimum of every 15 minutes, during wellness checks. In regard to soap being kept in his cell at all times, this is also a decision that should be made based on a clinical assessment. Soap can be provided when it is clinically appropriate, but this requires his cooperation. Showers and hygiene are available three time per week for someone in Mr. Williams situation. Mr. Williams has declined showers and soap when offered.

6. Mr. Williams also demands that IDOC provide him with the same standard-issue toothbrush, with standard sized bristles, that general population inmates at IMSI receive. Similar

**SECOND DECLARATION OF WALTER CAMPBELL, Ph.D - 3**

to the concern with utensils, a toothbrush is a very common item used in self-harm. The modified toothbrush he is provided with is designed with safety in mind.

7. Mental health treatment is based on an "Informed Consent" model. While we recognize our responsibility to provide mental health treatment, we also recognize Mr. Williams' right to refuse treatment. This is outlined in the NCCHC standard MH-I-04 and the APA code of ethics. We also note that Mr. Williams does not rise to the level of involuntary medication, pursuant to IDOC SOP 401.

8. Efforts continue to have Mr. Williams join the prison population and have access to programs and peers – however, this requires a modicum of engagement on his part. Clinical visits have been made daily, and clinical assessments have been refused by Mr. Williams. He continues to express thoughts of suicide and or homicide. The requests made here are not clinically appropriate given our inability to conduct a necessary assessment.

9. Mr. Williams was moved to the Idaho Maximum Security Institution on February 23, 2021. This placement decision was multidisciplinary, meaning mental health professionals worked together with security, medical, and administrative team members. Complex behavioral situations such as Mr. Williams presents require effective multidisciplinary decision-making as a matter of good correctional and clinical practice. That being said, my clinical opinion is that moving Mr. Williams to a new facility is an appropriate decision for several reasons:

    a. The ability of ISCC clinical staff to develop a therapeutic relationship with Mr. Williams (which could have led to engagement and the subsequent discontinuation of suicide watch) had been exhausted. In such situations, it is not uncommon to try a "fresh start" with a new clinical team who may be able to engage a patient.

**SECOND DECLARATION OF WALTER CAMPBELL, Ph.D - 4**

      b. Mr. Williams had received unauthorized property on occasion at ISCC, which could be used for self-harm or other disruptive behavior. IMSI is a more appropriate physical plant in which to monitor his access to property more closely.

      c. IMSI houses the acute mental health unit, where our residents with the most challenging mental- and behavioral-health challenges are housed. Staff are, consequently, fare more accustomed to managing severe behavioral challenges, such as Mr. Williams presents, than ISCC staff.

10. Mr. Williams has been on close observation for many months. Mr Williams did eat yesterday after he was given a spork, although clinical staff registered their concern about providing this item to him. In such a situation where security believe an item should be offered and clinical staff disagree, our SOP provides a dispute resolution procedure in which the site administration make the final decision. This process was initiated and the decision was made for the spork to be provided. In this case, the outcome appears to be positive, although it goes without saying ongoing monitoring will be required.

I certify and declare under penalty of perjury pursuant to the law of the State of Idaho that the foregoing is true and correct.

DATED this 15th day of March, 2021.

/s/ Walter Campbell
Walter Campbell

**SECOND DECLARATION OF WALTER CAMPBELL, Ph.D - 5**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of March, 2021, I filed the foregoing electronically through the CM/ECF system which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Craig H. Durham
FERGUSON DURHAM, PLLC
chd@fergusondurham.com

*Attorney for Plaintiff*

           */s/ Michael J. Elia*
           Michael J. Elia

**SECOND DECLARATION OF WALTER CAMPBELL, Ph.D - 6**