UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KENT WILLIAMS,<br><br>    Plaintiff,<br><br>v.<br><br>DEPUTY WARDEN McKAY, et al.,<br><br>        Defendants. | Case No. 1:20-cv-00008-REP<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

Plaintiff Kent Williams is proceeding on his First Amended Complaint against Idaho Department of Correction (IDOC) Defendants McKay, Morrison, Christensen, Blades, Kevan, Howard, Radzyminski, Lau, Dietz, Klingensmith, Husk, Baker, Chappelle, Olsen, Held, Sanabaria, Tramel, White, Frahs, Janoushek, Zudak, and Contreras in this prisoner civil rights action.[1] Dkt. 19. Pending before the Court is Defendants' Motion for Summary Dismissal. Dkt. 129. The motion is now fully briefed and ripe for adjudication. All named parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 22, 145.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

---

[1] Defendant "Brother" is included in the Motion for Summary Dismissal but does not seem to be named in the Amended Complaint. Dkt. 19. Nor was Plaintiff authorized to proceed against a defendant named "Brother." If this is the corrected name of a defendant, the parties should clarify this in their upcoming briefing.

**MEMORANDUM DECISION AND ORDER - 1**

The facts underlying this case began to take shape in 2018 when Plaintiff decided to challenge the constitutionality of the IDOC grievance policy's prohibition of disrespectful language. He seemingly sought to win a punitive damages award in litigation, as was his plan in an almost-identical lawsuit filed against Ada County Jail employees.[2] In this case against IDOC employees, the following "concern forms" (which are the first step in the IDOC grievance process), grievances, and grievance appeals of Plaintiff are at issue:

- Two to four concern forms containing disrespectful language submitted every day for six days, plus other similar forms submitted over the next weeks and months. Prison employees returned them to him to be rewritten without the disrespectful language, which he refused to do. He never followed the instructions to remove the disrespectful language in his concern forms, and officials never processed the original concern forms. *See* Dkt. 19.

- A concern form containing arguable threats against prison staff, attempting to convince them to remove commissary and property sanctions from his prison

---

[2] *See* Case No. 1:-16-cv-143-DCN, *Williams v. Fox*, where evidence shows that Plaintiff, in his previous incarceration setting at the Ada County Jail, raised this same legal issue for the purpose of trying to obtain a large monetary settlement or jury verdict.

Plaintiff's motivation is not a factor at the pleadings stage, but may be relevant to credibility at trial. *See Richey v. Stemler*, No. C19-0769-RAJ-MAT, 2020 WL 8370941, at *4 (W.D. Wash. Apr. 16, 2020), *report and recommendation adopted in part, rejected in part*, No. 2:19-CV-00769-RAJ, 2021 WL 322708 (W.D. Wash. Feb. 1, 2021) ("Despite plaintiff's view of the OGP as simply a money-making venture, the actual point of the program is to promote effective communication between staff and prisoners and to resolve actual conflicts and grievances.")

**MEMORANDUM DECISION AND ORDER - 2**

record to give him a more favorable chance to be paroled. (The parties should provide additional facts about what acts resulted in the original sanctions and what sanctions, if any, resulted from the arguably threatening concern form.) *See* Dkt. 137-2, p. 2.

- A grievance complaining about the unconstitutional nature of the grievance procedure and the way it was administered. The grievance was respectful at the first stage and was answered, but was disrespectful at the appellate stage, where the warden asked him to rewrite the content without the disrespectful language pursuant to policy, and Plaintiff did not. *See* Dkt. 137-3, pp. 2-3.

In response to Plaintiff's deluge of verbally-abusive concern forms, prison supervisors crafted and implemented a plan for employees to respond to the filings. At the heart of the plan was the grievance policy provision requiring prisoners to rewrite disrespectful grievances in respectful language in order to have their grievances considered. Plaintiff continued to assert that the prison grievance system was unconstitutional and did not rewrite his concern forms or grievances. He filed suit without having completed a grievance appeal.

Two threshold questions are at issue: (1) whether Plaintiff has failed to state a claim upon which relief can be granted; and (2) whether he failed to exhaust his administrative remedies before filing his lawsuit or should be excused from doing do.

An analysis of clearly-established law is necessary to address whether Plaintiff has failed to state a claim upon which relief can be granted. Because determining clearly-

established law is also the foundation for a qualified immunity defense, the Court includes qualified immunity considerations in its analysis. [3]

Unless the parties can show otherwise, the Court will consider the claims for right to petition and exercise free speech as the same claim, given that the right to exercise such speech in prison is applicable only to written grievance documents. However, it is important to note that different standards apply to claims of the right to petition the government for redress/right of free speech in petitioning and the right to be free from retaliation for exercising free speech.

**REVIEW OF MOTION TO DISMISS ON
GROUNDS OF FAILURE TO STATE A CLAIM
AND UPON ADDITIONAL SCREENING**

### 1.  Standard of law governing summary dismissal

A complaint under Federal Rule of Civil Procedure 12 should be dismissed if it lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). The court generally should not consider materials outside the complaint and pleadings when reviewing a motion for summary dismissal. *See Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997). However, the court may consider attachments to the complaint and any document referred to in (even if not attached to) the complaint, where authenticity of a document is not in question. *Id*. at 622-23. A court may also take judicial notice of matters of its own

---

[3] However, because qualified immunity and the merits are not yet at issue, the parties should confine their next set of briefing to exhaustion.

**MEMORANDUM DECISION AND ORDER - 4**

records, *In re Korean Air Lines Co., Ltd., Antitrust Litigation*, 642 F.3d 685, 689 n.1 (9th Cir. 2011), and public records,[4] such as records and reports of administrative bodies. *Barron v. Reich*, 13 F.3d 1370 (9th Cir. 1994).

### 2. Standard of law governing a prisoner's right to petition via the grievance system and prison officials' interpretation of the law reflected in the current prison policy

Prisoners, "like other individuals, have the right to petition the Government for redress of grievances which, of course, includes access of prisoners to the courts for the purpose of presenting their complaints." *Cruz v. Beto*, 405 U.S. 319, 321 (1972) (internal citations and punctuation omitted). Because the Prison Litigation Reform Act of 1995 ("PLRA")[5] requires prisoners to exhaust the administrative appeals process before filing an action in court, "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system." *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), *overruled on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001).[6]

First Amendment free exercise rights are not unlimited in prison. In *Turner v. Safley*, 482 U.S. 78 (1987), the United States Supreme Court set forth four factors a court

---

[4] Defendants have directed the Court to take judicial notice of online IDOC grievance procedures, but the link takes the Court to procedures that were adopted in November 2018, whereas the earliest of Plaintiff's claims are from January 2018, when an older policy would have been in place. Both policies should be submitted in support of future briefing.

[5] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

[6] In *Shaw v. Murphy*, the United States Supreme Court disapproved of the *Bradley* Court's "balancing" analysis in applying the factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987) to determine whether a prison can infringe a prisoner's First Amendment rights. But the Supreme Court agreed with the outcome of *Bradley*.

**MEMORANDUM DECISION AND ORDER - 5**

must consider when prisoners allege that a regulation or practice impinges on their First Amendment rights: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" at a "de minimis cost" exist, which "may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns." 482 U.S. at 89-93 (internal quotation marks omitted).

In 1995, in the context of reviewing a retaliation claim under the *Turner* standard, the United States Court of Appeals for the Ninth Circuit issued an opinion in *Bradley v. Hall*, stating: "Today we *hold only* that prison officials may not punish an inmate merely for using 'hostile, sexual, abusive or threatening' language in a written grievance." *See id.*, 64 F.3d at 1279. *Bradley* did not address whether a prison policy could require prisoners to rewrite grievances prior to processing grievances in situations where punishment was not at issue. Nor did *Bradley* address a situation where the inmate had filed multiple grievances with disrespectful language, as here.

In 2009, in the context of another retaliation claim, *Brodheim v. Cry*, 584 F.3d 1262 (9th Cir. 2009), the Ninth Circuit Court's holding was even narrower:

> The determination of an individual prisoner in persisting in filing grievances in spite of a threat of retaliation does not indicate he has not suffered a constitutional wrong. Even if the threat or warning is general and not carried out, a prisoner may prevail on a First Amendment claim if that

**MEMORANDUM DECISION AND ORDER - 6**

> threat would chill the protected activity of an ordinary
> prisoner.

*Id*. at 1273.

*Brodheim* did not address whether a prison policy could require prisoners to rewrite grievances as a prerequisite to processing them in situations where no warning or punishment was issued. As in *Bradley*, only one grievance was at issue in *Brodheim*.

*Bradley* and *Brodheim* constituted clearly-established law governing claims for *retaliation* for prisoners' exercise of the right to free speech in the context of prison grievances. The IDOC grievance policy reflects that Idaho policymakers interpreted these cases narrowly,[7] that is, they construed them to apply only to the right to be free from retaliation for submitting disrespectful grievances, not the right to petition the government. Neither *Bradley* nor *Brodheim* addressed whether it was lawful to refuse to process or address the original grievance if the prisoner declined to rewrite it in respectful language.

In 2018, a Ninth Circuit panel issued an opinion about both the right to petition and the right to be free from retaliation—*Richey v. Dahne*, 733 F. Appx 88 (9th Cir. April

---

[7] "Broadly interpreting" cases for qualified immunity is contrary to United States Supreme Court precedent. *See Mullenix v. Luna*, 577 U.S. 7, 12 (2015):

> The dispositive question [for qualified immunity] is "whether the violative nature of *particular* conduct is clearly established." *Ibid.* (emphasis added). This inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen,* 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (*per curiam*) (quoting *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

**MEMORANDUM DECISION AND ORDER - 7**

25, 2018).[8] *Richey* is an unpublished opinion. Ninth Circuit Rule 36-3 provides: "Unpublished dispositions and orders of this Court are not precedent…." 9th Cir. Rule 36-3 (citation of unpublished opinions). In *Hart v. Massanari*, 266 F.3d 1155 (9th Cir. 2001), the Ninth Circuit explained: "[T]he disposition [in an unpublished opinion] is not written in a way that will be fully intelligible to those unfamiliar with the case, and the rule of law is not announced in a way that makes it suitable for governing future cases." *Id*. at 1178.

If unpublished cases are written in a manner that makes them unsuitable for governing future cases, *Richey* should not be considered clearly-established law. Because *Richey*'s holding set forth what that panel considered to be clearly-established law about the right to petition, that determination still may be questioned, given that its decision may not be "suitable for governing future cases." *See id*. Because it is unpublished, *Richey* has limited analysis. It is unclear which arguments were considered and rejected and, if so, on what grounds. For example, it is unknown whether the defendant in that case made an argument that qualified immunity protects an employee who was following prison policy—which may be important here, as the uniform plan adopted by prison employees to handle Plaintiff's multiple grievances was based on the grievance policy.[9]

---

[8] Some of Plaintiff's claims arose before *Richey*, and some afterward. Resolution of the clearly-established law inquiry is governed by cases published before the alleged violation, but the court may "also examine cases published after the [alleged violation] to the extent they shed light on the fact that the law was not clearly established at the relevant time." *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1071 (10th Cir. 2009).

[9] Where a defendant acts pursuant to official prison policies, he or she may be entitled to qualified immunity. *Dittman v. California*, 191 F.3d 1020, 1027 (9th Cir. 1999) (statute or ordinance context); *see*

**MEMORANDUM DECISION AND ORDER - 8**

In *Richey*, the Ninth Circuit panel determined that *Brodheim* is to be "broadly interpreted"[10] to mean that (1) prison officials are permitted to ask a prisoner to rewrite a disrespectful grievance without violating the First Amendment, but, (2) if the prisoner refuses to rewrite it, to avoid a First Amendment violation prison officials must process the original grievance and address its substantive complaint, without regard to the disrespectful language. *Id.* at 883–84. The *Richey* court reasoned:

> The holding of *Brodheim* is not as narrow as Dahne contends. While it is true that *Brodheim* involved a warning or threat against a prisoner because of the content of a grievance, limiting *Brodheim* to only those types of cases would require that we ignore the *Brodheim* court's reasoning, and that we disregard the broader First Amendment framework under *Turner*. Instead, we consider that a correct reading of the scope of the holding in *Brodheim* is that rules prohibiting disrespectful language do not serve a legitimate penological interest in the special context of prison grievances.

*Richey*, 733 F. Appx at 883.

*Bradley* and *Brodheim* do not make it clear that prison officials transgress the First Amendment right to petition when they ask the prisoner to rewrite the grievance and then

---

*also Brown v. Mason*, 288 Fed.Appx. 391, 392-93 (9th Cir. 2008) ("Defendants are entitled to qualified immunity because they confiscated Brown's photographs pursuant to official prison policies, which policies were not 'patently violative of constitutional principles.'"). *But see Grossman v. City of Portland*, 33 F.3d 1200, 1209-10 (9th Cir. 1994) ("Where a statute authorizes official conduct which is patently violative of fundamental constitutional principles, an officer who enforces that statute is not entitled to qualified immunity.").

[10] *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) ("This Court has "'repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality.'" (citing cases)).

refrain from processing it if the prisoner refuses to remove the disrespectful language. Here, there does not seem to be a "robust consensus of cases of persuasive authority" that could "clearly establish the federal right [Plaintiff] alleges." *See Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Nevertheless, the Ninth Circuit decided in *Richey* that Dahne had violated Plaintiff's right to petition when Dahne did not process the original grievance when Richey refused to rewrite it to remove the offense remarks. *See* 733 Fed. Appx. at 883-84.

### 3. A prisoner's right to be free from retaliation and prison officials' duty to protect employees and maintain a secure and orderly prison

Conversely, the basic right to be free from retaliation associated with the submission of disrespectful grievances was clearly established after *Bradley* and *Brodheim*. It was and is clear that prison officials are not permitted to warn prisoners of punishment or punish them for disrespectful language in their grievances, and that a warning or punishment may constitute retaliation for the exercise of First Amendment rights.

However, the range of exceptions to this rule remains unclear. For example, *Brodheim*'s language about "a substantial threat to security and discipline" has not been further analyzed by a precedential court. *See* 584 F.3d at 1273.

In *Richey*, the Court held that the prison officials could not be held liable on a retaliation claim simply because they failed to process a grievance. The court reasoned, "[b]ecause of the lack of case law addressing the issue of whether not processing a grievance could be viewed as retaliation, it is not the case that 'every reasonable official

would have understood' that refusing a grievance violates a prisoner's right against retaliation." *Richey*, 733 F. Appx. at 884 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Prison employee Dahne was entitled to qualified immunity because he was not on notice that he should have processed the disrespectful grievances if Richey refused to rewrite them to avoid a retaliation claim. The court reasoned that, "in context in *Brodheim* the "adverse regulatory action" language refers to some additional punitive action or threat of punitive action over and above merely refusing to accept the grievance." *Id*. (citing *Brodheim*, 584 F.3d at 1270–71).

As to exceptions to the broad retaliation rule regarding content of prisoner grievances, the *Richey* court added

> Under the *Turner* framework, a prison may constrain the expression of prisoners for a non-content-based legitimate penological reason, such as avoiding hostilities or potential violence. But absent such a legitimate penological reason, content-based limitation of a prisoner's expression is unconstitutional.

*Id.* at 883. How this applies to prison officials trying to determine what they can and cannot do to protect their employees from harassment, prevent unnecessary distractions that could compromise security, and curb abuses of the grievance system, is unclear.

This outline of the law lays the groundwork for resolving the failure to state a claim defense in the pending Motion for Summary Dismissal.

### 4.  Discussion

First, because most of Plaintiff's claims are aligned with the *Richey* panel's interpretation of the status of the law, the Court rejects Defendants' assertion that

Plaintiff has failed to state a claim upon which relief can be granted. That portion of the Motion for Summary Dismissal will be denied. The Court will not entertain any further arguments from Defendants that Plaintiff has not stated a claim in his Amended Complaint. At a later stage of proceedings, after disclosures and discovery, Defendants are free to argue that Plaintiff's claims fail on the merits.

Second, Defendants argue that Plaintiff did not cure the vagueness of the original Complaint by his amendment. They contend that the Amended Complaint does not state particularly the subject matter of each rejected concern form. Plaintiff counters that he did clarify that his concern forms were not simply frivolous, but presented prison conditions and staff misconduct claims. For a pro se prisoner at the pleading stage, this meets Federal Rule of Civil Procedure 8's requirement to state a short and plain statement of the basis for relief.

Third, the Court retains and will exercise its screening authority throughout this litigation. See 28 U.S.C. §1915(e).[11] In its review of the Amended Complaint, the Court concludes that Plaintiff will not be permitted to proceed on the following: (1) the due process theory based on IDOC rules and regulations in the claim found at Dkt. 19, ¶¶ (29-31), based on events from August 25, 2019, against Defendant Radzyminski (Plaintiff may proceed on this claim on other legal theories); and (2) the supporting allegations entitled "continuous illicit behavior" of all named Defendants in Dkt. 19, ¶ (19), which is

---

[11] "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss [an in forma pauperis] case at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious. . . [or] fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B).

not a stand-alone claim but supports causes of actions asserted elsewhere in the Amended Complaint.

Plaintiff has also requested that the Court clarify whether he is being permitted to proceed on some of his claims, including supervisory theories, not addressed in prior screening orders. The Court does so below. In all, Plaintiff has stated 26 claims, as follows:

### (1)   Dkt. 19, ¶ (1)

On January 10, 2018, Plaintiff submitted a concern form stating that a correctional officer should not have issued a C-Note for Plaintiff's use of allegedly disrespectful but protected speech in a prior concern form. Defendant McKay returned the concern form to Plaintiff. It was not rewritten; it was not processed. This is an alleged violation of the right to petition against McKay.

### (2)   Dkt 19, ¶ (2)

On January 12, 2018, Plaintiff submitted a concern form to the medical unit to grieve a medical issue. McKay returned it on the basis of disrespectful language, citing the grievance policy. Plaintiff did not rewrite it, and the concern form was not processed. This is an alleged violation of right to petition against McKay.

### (3)   Dkt 19, ¶¶ (3-6)

In February 2018, Plaintiff wrote a grievance complaining that prison officials should not reject grievances for containing disrespectful language. Defendant Emily Morrison, the facility grievance coordinator, rejected this grievance, and several more, saying, "I have been told to follow [the grievance policy addressing disrespectful

**MEMORANDUM DECISION AND ORDER - 13**

language].” Plaintiff says that Morrison admitted to him in a verbal conversation that she had read case law and admitted that following such a policy is not a legal defense. Plaintiff sent Morrison a concern form documenting their conversation. She again said she had been told to follow the policy. The grievances were not processed. This is an alleged violation of the right to petition against Morrison.

### (4)   Dkt. 19, ¶ (7).

On January 14, 2018, Plaintiff wrote a concern form stating that the inmate accounting unit refused to provide him with an accounting statement. (He does not allege simply that he requested an accounting statement via a concern form, as Defendant construes the claim.) It was rejected by McKay for disrespectful language. Plaintiff did not rewrite it, and the concern form was not processed. This is an alleged violation of right to petition against McKay.

### (5)   Dkt. 19, ¶¶ (8-11).

On May 3, 2018, Plaintiff wrote Warden Christensen a concern form to notify him that staff were rejecting grievances for illegal reasons and in violation of *Richey v. Dahne*, 733 F. Appx. 881 (2018). Plaintiff wrote that the warden was “a ‘stupid fuck’” for not looking up *Richey*. McKay returned the concern form with instructions to rewrite it to receive a response. Plaintiff did not rewrite it, and the grievances was not processed. This is an alleged violation of the right to petition and includes a supervisory liability theory of liability for failure to train and supervise against Christensen and McKay.

**MEMORANDUM DECISION AND ORDER - 14**

**(6)    Dkt. 19, ¶¶ (12-13)**

On April 11, 2018, Plaintiff attempted to grieve Defendant Morrison's position

that a prisoner can harass a prison employee in a grievance by using disrespectful

language, even if that employee had no personal notice of the grievance. McKay

intercepted the form, returned it, and gave no response. It was not rewritten or processed.

This is an alleged violation of right to petition and includes a supervisory liability theory

of liability against McKay.

**(7)    Dkt. 19, ¶¶ (14-16)**

On May 16, 2019, Plaintiff sent a concern form to the mailroom grieving

rejections of outgoing legal mail. Defendant Zudak returned the concern form, saying,

"You need to address staff appropriately." It was not rewritten or processed. This is an

alleged violation of right to petition against Zudak.

**(8)    Dkt. 19, ¶¶ (17-19)**

On May 27, 2018, Plaintiff sent a concern form to Warden Christensen: "Can you

train your inbred idiots? To stop refusing food trays they issue to other cells and then

retrieve after being in another inmate's cell?" Christensen returned the form to Plaintiff,

saying: "You may resubmit with appropriate language." It was not rewritten or processed.

This is an alleged violation of right to petition against Christensen.

The Court does not consider paragraph 19 as a separate claim, but as an allegation

that supports the elements of the First Amendment right to petition asserted as the legal

basis for many of his claims against Defendants.

(9)   **Dkt. 19, ¶¶ (20-21)**.

On October 11, 2018, the prison paralegal returned Plaintiff's post-conviction petition which had been submitted for copying (no allegations are included about the context of why a copy was needed). The paralegal said it was not an access-to-courts issue and refused to copy it. Plaintiff alleges: "I sent him a concern trying to get him to realize he's an idiot and to copy it." McKay intercepted it and did not reply due to disrespectful language. It was not rewritten or processed. This is an alleged violation of the right to petition and includes a supervisory liability theory of liability against McKay.

(10)   **Dkt. 19, ¶¶ (22-23)**

On January 1, 2019, facility grievance coordinator Morgan Kevan returned several unprocessed grievances to Plaintiff. They were grieving conditions of confinement, staff misconduct, staff refusing to process grievances, and Kevan's failure to correct and supervise subordinate employees. The grievances were not processed. This is an alleged violation of the right to petition and includes a supervisory liability theory against Kevan.

(11)   **Dkt. 19, ¶¶ (24-25)**

In January 2019, Plaintiff grieved Kevan's actions of failing to permit Plaintiff to petition (grievance no. 180000050). Supervisor Kelsey Howard became aware of the subordinate's behavior (Kevan) and refused to correct it. Warden Blades and Deputy Warden McKay reviewed the grievance and failed to correct their subordinates' behavior. Morgan returned the unprocessed grievance to Plaintiff. This is an alleged violation of

**MEMORANDUM DECISION AND ORDER - 16**

right to petition and includes a supervisory liability theory of liability against Morgan, McKay, and Blades.

**(12)   Dkt. 19, ¶ (26)**

On February 16, 2019, Morgan returned an unprocessed grievance about prison conditions and staff misconduct to Plaintiff because Morgan's supervisor, Howard, determined that it contained disrespectful language. This is an alleged violation of the right to petition under a supervisory theory against Howard.

**(13)   Dkt. 19, ¶ (27)**

On February 22, 2018, Morrison rejected a grievance submitted about conditions of confinement and staff misconduct because it contained personal attacks and harassment. This is an alleged violation of the right to petition against Morrison.

**(14)   Dkt. 19, ¶ (28)**

On March 23, 2018, Warden Christensen refused to answer a grievance appeal and asked Plaintiff to resubmit it respectfully. (Dkt. 137-3, p. 2.) This is an alleged violation of right to petition against Christensen.

**(15)   Dkt. 19, ¶¶ (29-31)**

On August 25, 2019, Plaintiff submitted a concern form addressed to Deputy Warden McKay about staff retaliatory sanctions that should not have been imposed. (Dkt. 137-2, p. 2.) Defendant Radzyminski found the unprocessed concern form addressed to McKay on the staff desk, describing it as follows:

> In the concern form Williams demanded that his sanctions of 60 commissary and 60 property be lifted immediately. Williams went on to state that he is a lifer and

> these sanctions don't mean anything to him and that he did 9
> years in ad seg without any property. He then stated: "If the
> meaningless sanctions are not lifted in 3 days out of principal
> [sic] … I'll never warn you idiots again…Trust me."
> Williams then went on to state that, "It may take time but I
> will get revenge you can't comprehend right now." All of this
> was done in a blatant attempt to harass and intimidate staff
> through words to get the sanctions removed."

Dkt. 137-2, p. 2.

Plaintiff alleges that Radzyminski threatened him, contrary to prison policy and the Constitution. Plaintiff asserts that his use of merely harassing-type language cannot be the basis of discipline under well-established case law. Plaintiff reminded Radzyminski in person that he could not "infract" him for the words he used in a grievance document. Plaintiff alleges that Radzyminski responded: "I might knock your teeth out if you submit any more disrespectful grievances." *See* Dkt. 19, ¶ (31).

Plaintiff asserts that Radzyminski violated his Fourteenth Amendment due process rights by "infracting [him] for conduct authorized by very [sic] posted rules and notices." Dkt. 19, ¶ 31. The law is clear that there generally is no federal due process right to enforce prison rules and notices. *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995) ("States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.") (internal citation omitted).

**MEMORANDUM DECISION AND ORDER - 18**

These allegations state a First Amendment claim, which is the preferred cause of action to a Fourteenth Amendment claim, regarding petitioning, free exercise, and freedom from retaliation. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.").

The Court concludes that the allegations in these paragraphs do not state a federal due process claim arising from a prison rule or regulation, but they do state claims under the First Amendment theories (subsuming Fourteenth Amendment due process theories) of petitioning/free exercise, and freedom from retaliation claims against Radzyminski. An important issue for summary judgment or trial is whether Plaintiff's retaliation claim fails because the grievance constituted a threat, or fits within another exception, to remove it from First Amendment protection.

Next, the Court rejects Defendant's assertion that this claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Ramirez v. Galaza*, 334 F.3d 850 (9th Cir. 2003), the Court concluded:

> [W]e hold that the favorable termination rule does not apply to § 1983 suits challenging a disciplinary hearing or administrative sanction that does not affect the overall length of the prisoner's confinement. Where the prison's alleged constitutional error does not increase the prisoner's total period of confinement, a successful § 1983 action would not necessarily result in an earlier release from incarceration, and hence, does not intrude upon the "heart" of habeas

**MEMORANDUM DECISION AND ORDER - 19**

> jurisdiction. In such cases, the favorable termination rule of *Heck* and *Edwards* does not apply.

*Id*. at 858.

**(16)   Dkt. 19, ¶ (33)**

Plaintiff alleges that Defendants Lau and Klingensmith "prevented [a] grievance from being filed and signed off on the infraction." These Defendants reviewed the Disciplinary Offense Report of Radzyminski and upheld it. McKay and Dietz also upheld it and failed to correct the behavior of subordinates. These are alleged violations of the right to petition and include a supervisory theory of liability against Lau, Klingensmith, McKay and Dietz.

**(17)   Dkt. 19, ¶ (34)**

On January 9, 2018, Correctional Officer Chappelle received a concern form and a letter from Plaintiff that complained of staff misconduct and conditions of confinement. She returned the concern form unprocessed for inappropriate language. Plaintiff explained his understanding of the law to her and gave the forms back to her. She threw them away in Plaintiff's presence, indicating that Lieutenant Husk authorized her to do so. The grievance was complaining staff misconduct and conditions of confinement. This is an allegation of a violation of the right to petition against Chappelle and Husk, and includes a supervisory theory of liability against Husk.

**(18)   Dkt. 19, ¶ (35)**

On January 8, 2018, Plaintiff passed four concern forms through his cell door, grieving conditions of confinement and staff misconduct of Chappelle. On Husk's orders,

**MEMORANDUM DECISION AND ORDER - 20**

Correctional Officer Olsen took two and threw them away because of disrespectful language. This is an allegation of a violation of the right to petition against Olsen and of the right to petition against Husk, and includes a supervisory liability theory against Husk.

### (19)   Dkt. 19, ¶ (36)

On January 10, 2018, Olsen ripped up and threw away two concern forms; she told him that if his concern forms contained disrespectful language, she could "trash them," on Husk's authorization. This is an allegation of a violation of the right to petition against Olsen and Husk, including a supervisory liability theory against Husk.

### (20)   Dkt. 19, ¶¶ (37-38)

On January 9, 2018, Plaintiff submitted a concern form grieving conditions of confinement and staff misconduct. Correctional Officer Held refused to process it because of disrespectful language. She threatened to file a C-note. This is an allegation of a violation of the right to petition and to be free from retaliation against Held.

### (21)   Dkt. 19, ¶¶ (39-40)

On January 8, 2018, Correctional Officer Sanabaria refused to process a concern form grieving conditions of confinement and staff misconduct. He returned it to Plaintiff unprocessed for inappropriate language, per Corporal Tramel's order. This is an allegation of a violation of the right to petition against Sanabaria and Tramel, including supervisory liability theories against Tramel.

**MEMORANDUM DECISION AND ORDER - 21**

**(22)   Dkt. 19, ¶¶ (41-42)**

On January 11, 2018, Defendant Correctional Officer White refused to process a concern form because it contained harassing language. This is an allegation of a violation of the right to petition against White.

**(23)   Dkt. 19, ¶¶ (43-44)**

On January 7, 2018, Defendant Correctional Officer Frahs refused to process two concern forms because of disrespectful language issues. This is an allegation of a violation of the right to petition against Frahs.

**(24)   Dkt. 19, ¶ (45)**

On January 7, 2018, Defendant Janoushek refused to process four concern forms because of disrespectful language issues. This is an allegation of a violation of the right to petition against Janoushek.

**(25)   Dkt. 19, ¶ (46)**

On January 8, 2018, Contreras refused to file two concern forms because of disrespectful language issues. This is an allegation of a violation of the right to petition against Contreras.

**(26)   Dkt. 19, ¶¶ (47-50)**

On January 10, 2018, Plaintiff sent Husk a concern form discussing Husk's alleged retaliation and his orders to subordinates permitting them to reject disrespectful grievances according to policy. On January 14, 2018, Husk returned a written reply in person, admitting in writing that he did instruct subordinates to reject disrespectful grievances. Husk told Plaintiff that if he continued to submit disrespectful grievances,

**MEMORANDUM DECISION AND ORDER - 22**

Husk would take his privileges away. Several other Defendants told Plaintiff that Husk had authorized them to refuse to process or destroy his grievances and personal outgoing mail. These allegations state claims for violations of the right to petition, the right to send mail, and the right to be free from retaliation against Husk.

### 5.  Exhaustion defense to be heard as a summary judgment motion

As to Defendants' exhaustion defense, the Court concludes that additional factual submissions and further argument are needed; therefore, summary judgment is a more appropriate procedure. When evidence beyond the pleadings and public records are used to determine summary judgment, the exhaustion issue should be determined as a matter of summary judgment under Rule 56. *Albino*, 747 F.3d at 1170;[12] *see* Fed. R. Civ. P. 12(d); *see also* Fed. R. Civ. P. 56(e)(1) (as a matter of the Court's discretion, where assertions of fact or objections to another party's assertion of facts are not properly supported or addressed, the Court may bring the deficiency to the attention of the parties and give them an opportunity to supplement their briefing and evidence, or may issue any other appropriate order).

_____

[12] In *Ross v. Blake*, 578 U.S. 632, 648 (2016), the United States Supreme Court emphasized the necessity of reviewing all relevant evidence before making exhaustion-of-administrative-remedies determinations:

> In light of all these lodgings and the questions raise[d] about Maryland's grievance process, we remand this case for further consideration of whether Blake had "available" remedies to exhaust. The materials we have seen are not conclusive; they may not represent the complete universe of relevant documents, and few have been analyzed in the courts below. On remand, in addition to considering any other arguments still alive in this case, the court must perform a thorough review of such materials, and then address the legal issues we have highlighted concerning the availability of administrative remedies.

**MEMORANDUM DECISION AND ORDER - 23**

The exhaustion portion of the Motion for Summary Dismissal will be denied without prejudice. Defendants may submit a motion for summary judgment on the exhaustion defense instead. Thereafter, the Court will determine whether an evidentiary hearing is required on the exhaustion issue. In the following section of this Order, the Court identifies factual and legal issues that the parties should address with briefing and supporting evidence.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

**1. Standard of law governing exhaustion of administrative remedies**

The PLRA requires prisoners to exhaust all available prison administrative remedies before they can bring their claims in a new or ongoing civil rights lawsuit challenging the conditions of their confinement. 42 U.S.C. § 1997e(a); *see Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Proper exhaustion is required "even where it may appear futile." *Nunez v. Duncan*, 591 F.3d 1217, 1231 (9th Cir. 2010) (quoting *Booth v. Churner*, 532 U.S. 731, 741 (2001)).

As the PLRA intended, all motions addressing exhaustion of administrative remedies, including "disputed factual questions relevant to exhaustion[,] should be decided at the very beginning of the litigation." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc). The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially

MEMORANDUM DECISION AND ORDER - 24

shows that (1) an available administrative remedy existed and (2) the prisoner failed to

exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth

evidence "showing that there is something in his particular case that made the existing

and generally available administrative remedies effectively unavailable to him." *Albino*,

747 F.3d at 1172.

Federal Rule of Civil Procedure 56 prohibits the courts from resolving genuine

disputes as to material facts on summary judgment. If a genuine dispute exists as to

material facts necessary to determining exhaustion, the motion should be denied, and the

"disputed factual questions relevant to exhaustion should be decided by the judge, in the

same manner a judge rather than a jury decides disputed factual questions relevant to

jurisdiction and venue." *Albino*, 747 F.3d at 1170-71. *See Lake v. Lake*, 817 F.2d 1416,

1420 (9th Cir. 1987) (the court has the discretion to take evidence at a preliminary

hearing to resolve any questions of credibility or fact, and the plaintiff must establish the

facts by a preponderance of the evidence, just as he would have to do at trial).

If the Court concludes that a prisoner has failed to exhaust available administrative

remedies, the appropriate remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315

F.3d 1108, 1120 (9th Cir. 2003), *overruled in part on other grounds by Albino*, 747 F.3d

1162.

### 2.  Sample Grievance

An example of one of Plaintiff's grievances is No. IC 180000227, dated 03/06/18.

Dkt. 137-3, p. 2. The initial grievance respectfully grieved a prison conditions issue: he

complained that Emily Morrison, the grievance coordinator, unlawfully refused to

process a grievance because it contained personal attacks and harassment against staff members. In respectful language, Plaintiff proposed a solution of firing Morrison and paying Plaintiff compensation. *Id*. Morrison answered the grievance in a respectful manner and in accordance with the prison grievance policy, stating, "I will process any grievance within the guidelines of policy. I am here to help you find resolutions. Please note some information below to help us process your grievances." *Id*. Morrison then cited the policy indicating that disrespectful grievances will be returned with a note to rewrite them before they are processed. *Id*.

The reviewing authority, Deputy Warden Timothy McKay, denied the grievance for two reasons: (1) staffing matters are beyond the scope of the grievance process (apparently focusing on the proposed solution of firing Morrison); and (2) "requiring you to follow an SOP which you do not agree does not entitle you to compensation." *Id*., p. 3.

Plaintiff then drafted his grievance appeal to the warden:

> (So you all do not care what the law says?) Lawless shits yes, and as noted Brodheim v Cr 384 F3d 1262 and many others your policy violates the constitution and as such Is not a defense for qualified community – new the suit 2 failed was assigned to that foul dirty Judge windmill who temp. dismissed it contrary to the law but it will get nut suck in so have fun for new you filthy criminals. Obviously once the 9th cir reviews it will se back on A long process 2 have resolve that bitch criminal of a Judge Windmill (your Pal) will not stop you all being held liable
>
> This aint my first rodeo-game on punks and can Mckay speak intelligibly please what does that idiot mean anyway?

Dkt. 137-3, p. 3 (verbatim from typed grievance form).

**MEMORANDUM DECISION AND ORDER - 26**

Warden Jay Christensen wrote back that an appeal could be resubmitted if written respectfully. *Id.* Plaintiff did not rewrite the grievance.

### 3. Discussion: The PLRA instituted a mandatory exhaustion rule

In *Porter v. Nussle*, 534 U.S. 516 (2002), the Supreme Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532. Moreover, "the PLRA prevent[s] a court from deciding that exhaustion would be unjust or inappropriate in a given case." case. *Ross v. Blake*, 578 U.S. 632, 641 (2016).

Here, Plaintiff's complaint about the grievance system can be classified as a "suit about prison life." He faces an uphill battle arguing that his subject matter is exempt from the phrase, "all inmate suits about prison life, whether they involve general circumstances or particular episodes."

### 4. Discussion of how to exhaust claim about prison life in the IDOC system

Because there "is no express federal law describing the procedural requirements with which prisoners must comply in satisfying § 1997e(a)'s exhaustion requirement," the procedures contained in a prison's administrative grievance policy serve as the measure for whether an inmate has properly exhausted his administrative remedies. *Woodford* v. Ngo, 548 U.S. 81, 90-91 (2006). The prisoner must comply "with an agency's deadlines and other critical procedural rules." *Id.* at 90-91. A prisoner cannot satisfy the PLRA's exhaustion requirement by filing "an untimely or *otherwise*

*procedurally defective* administrative grievance or appeal." 548 U.S. at 83–84 (emphasis added).

One interpretation of the *Woodford* proper exhaustion explanation is that compliance with *only* critical procedures is required, and compliance with non-critical rules is not. *See* Karen M. Harkins Slocomb, *How the Court Got It Wrong in Woodford v. Ngo by Saying No to Simple Administrative Exhaustion Under the PLRA*, 44 San Diego L. Rev. 387, 421 (2007) (arguing that only critical procedures require compliance, but that the Supreme Court has not provided "a brightline definition of 'critical procedural rules,' and its holding leaves administrative procedure to the discretion of the individual prisons.").

The other view is that compliance with all of the procedural rules*, especially but not limited to*, critical ones, is required. For example, the United States District Court for the District of Colorado reasoned that the *Woodford* Court neither defined "critical," nor distinguished between "critical" and "non-critical" procedures," and therefore compliance with all of the agency's exhaustion procedures was required. *Jones v. Bradshaw*, No. 19-CV-01092-MEH, 2019 WL 5549164, at *4–5 (D. Colo. Oct. 25, 2019). The *Jones* court concluded that the prisoner's "attempt to carve out an exception to proper exhaustion by limiting it to compliance with only 'critical' procedural rules contravenes" *Woodford* and *Ross*." *Id*. at *5.

Important to Plaintiff's case, the Supreme Court has clarified: "Prisoners must now exhaust all 'available' remedies, *not just those that meet federal standards*." *Woodford*, 548 U.S. at 85 (emphasis added). In Plaintiff's case, relevant "federal

**MEMORANDUM DECISION AND ORDER - 28**

standards" may be (1) that disrespectful language in a single grievance is permitted and such grievances should be processed even if prisoners refuse to rewrite them, and (2) that prison officials may warn or discipline prisoners for submitting written documents containing substantial threats that disrupt safety or discipline or that abuse the grievance system.

As how all of *Woodford*'s clarifications apply to this case, the parties should address whether the phrase "otherwise procedurally defective administrative grievance" includes a grievance containing disrespectful language, and whether the disrespectful language prohibition is a "procedural rule" with which Plaintiff was required to comply. *See* 548 U.S. at 83–84, 90-91. The parties also should address whether Plaintiff was required to comply with critical and noncritical procedural rules under the PLRA and what it means to Plaintiff's case when the *Woodford* court stated that the prisoner must exhaust without regard to whether the administrative procedures put in place by the prison "meet federal standards." *See id*., at. 85.

### 4. Discussion of whether there is an exception to the exhaustion requirement because of the unique subject matter of Plaintiff's claim

Plaintiff argues that his unique subject matter requires application of an exception to the plain exhaustion rule. In *Ross*, the Court foreclosed that option, emphasizing that courts are not permitted to "add unwritten limits onto" the statute's "rigorous textual requirements." 578 U.S. at 639–40 (internal citations omitted). In *Woodford*, the Court rejected the dissent's assertion that "[b]ecause respondent has raised constitutional claims," he was entitled to bypass the prison administrative remedy procedures. 548 U.S.

at 91 n.2. The majority responded: "[W]e fail to see how such a carve-out would serve Congress' purpose of addressing a flood of prisoner litigation in the federal courts, when the overwhelming majority of prisoner civil rights and prison condition suits are based on the Constitution." *Id*. (internal citation omitted).

In *Ross*, the Court firmly reiterated that even prisoner mistakes about the grievance system do not warrant excusing the exhaustion requirement, and that courts are not required to "look to all the particulars of a case" to decide whether to excuse a failure to exhaust available remedies" because "such wide-ranging discretion 'is now a thing of the past.'" 578 U.S. at 641 (internal citation omitted).

### 5. Discussion: requiring exhaustion in Plaintiff's case serves the purposes and goals of the PLRA

The United States Supreme Court has identified all of the following as purposes or goals of the PLRA's mandatory exhaustion rule:

- Exhaustion "protects 'administrative agency authority.'" *Woodford*, 548 U.S. at 89.

- "Exhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court.'" *Id*.

- Exhaustion "discourages disregard of the agency's procedures." *Id*. at 89 (internal quotation marks and alterations omitted).

- Exhaustion "promotes efficiency. *Id*. "Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id*.

- Proper exhaustion reduces the quantity of prisoner suits because some prisoners are successful in the

**MEMORANDUM DECISION AND ORDER - 30**

administrative process, and others are persuaded by the proceedings not to file an action in federal court. *Id*. at 89.

- "[P]roper exhaustion improves the quality of those prisoner suits that are eventually filed because proper exhaustion often results in the creation of an administrative record that is helpful to the court. When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved." *Id*. at 94–95.

Here, a fully developed administrative record might have avoided litigation if Plaintiff had followed the prison rules to bring his issue to the attention of prison officials. He did not. The question is whether Plaintiff, believing that the current grievance system was unconstitutional, was permitted to ignore its requirements and proceed directly to court, thwarting the goals and purposes of the administrative remedy procedures.

### 6.  Discussion: Plaintiff's facts do not seem to meet any of the three exceptions to exhaustion

Three exceptions to exhaustion exist. The beginning point of this analysis is the statutory language. The PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 … by a prisoner … until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In *Ross*, the Court explained that a prisoner "is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" 578 U.S. at 642-43 (citing *Booth,* 532 U.S. at 737-38).

**MEMORANDUM DECISION AND ORDER - 31**

a.  Exception 1: the specified procedure results in a dead end

*Ross* explained that "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." 578 U.S. at 639–44 (citing *Booth*, 532 U.S. at 736). The Supreme Court gave an example of application of this exception: "a prison handbook directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions." *Id.* at 643. Such a system is "not 'capable of use' for the pertinent purpose." *Id*. Another example is "'where the relevant administrative procedure lacks authority to provide any relief,' the inmate has 'nothing to exhaust.'" *Id*. (citing *Booth,* 532 U.S. at 736, and n. 4). A third example is where "administrative officials have apparent authority, but decline ever to exercise it." *Id*. (citing *Booth*, 532 U.S. at 738). However, this exception is narrow, because "available" means only that there must be "the possibility of some relief." *Id*. (citing *Booth*, 532 U.S. at 738).

The United States District Court for the Southern District of Mississippi analyzed and rejected application of this exception in *Hinton v. Martin*, No. 3:16-CV-616-TSL-JCG, 2019 WL 3756480, at *4 (S.D. Miss. May 14, 2019), *report and recommendation adopted*, No. 3:16CV616TSL-RHW, 2019 WL 3754919 (S.D. Miss. Aug. 8, 2019). There, Hinton's original grievances were returned to him as procedurally improper at the first stage of the process. Instead of filing a "corrected, procedurally proper grievance before filing suit," *id*., at *4, Hinton asserted that he submitted what he considered to be "streamlined grievances" to the prison during the pendency of his court action. *Id*. at *2.

**MEMORANDUM DECISION AND ORDER - 32**

Because the grievances were rejected on procedural grounds, the court concluded: "The rejection of Hinton's grievances on procedural grounds alone does not provide evidence of unavailability under *Ross'* first exception." *Id*. at *4. This exception did not apply because there was " no evidence indicating that the grievance procedures operated as a 'simple dead end' for Hinton." *Id*. Rather, he simply refused to comply with the administrative grievance procedures as written.

Similarly, here, this exception does not seem to apply to Plaintiff, because the IDOC grievance system does offer a real remedy and sets forth clear rules for prisoners to access the remedies. Like Hinton, Plaintiff simply refused to follow the rules to complete the grievance policy. Prison employees continually notified Plaintiff that, to access the remedies, he need only delete the disrespectful language from his grievances. The evidence tends to show that he could have rewritten his grievance and it would have been accepted and proceeded through the grievance system, which does offer at least some of the relief sought—a change of policies and procedures.

### b.  Exception 2: a procedure that no ordinary prisoner can discern or navigate

The second exception is that prisoners are excused from using the grievance procedure if it is so complex or unwieldy that they cannot figure out how to use it. In *Ross*, the Supreme Court explained that a grievance procedure deemed "unavailable" includes one so "opaque" and "confusing" that it is practically "incapable of use," or one that is "essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands." 578 U.S. at 643–44. Importantly, *Ross* rejected the Fourth Circuit's interpretation that a grievance procedure is "unavailable" if it is not "sufficiently 'plain'

**MEMORANDUM DECISION AND ORDER - 33**

as to preclude any reasonable mistake or debate with respect to their meaning." *Id*. at 644. The bottom line is that "[w]hen an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Id*.

Here, this exception does not apply. The prison grievance system is simple to use. Plaintiff refused to follow the simple procedures, even after multiple low-and high-level prison employees told him that his grievances *would* be accepted for processing if he would only rewrite them without the disrespectful language. Plaintiff's grievance to Morrison shows that he knew how to submit respectful grievances, and that removing the disrespectful content did not detract from the subject matter of the grievance or make it impossible for him to articulate his issue.

  c. <u>Exception 3: thwarting prisoner by use of machination, misrepresentation, or intimidation</u>

The third exception is that exhaustion is excused if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644. Examples include procedural systems "devised … to "trip[] up all but the most skillful prisoners." *Id*. (citing *Woodford*, 548 U.S. at 102). Or in instances where "officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures." *Id*. In clear instances where prison employees' "interference with an inmate's pursuit of relief renders the administrative process unavailable," this exception applies. *Id.*

**MEMORANDUM DECISION AND ORDER - 34**

i.      <u>Alleged thwarting by refusal to accept concerns and grievances</u>

In Plaintiff's case, the issue is whether requiring compliance with the no-disrespectful-language provision of the grievance procedure equaled a "thwarting" of Plaintiff's ability to use the grievance system. The facts do not seem to support application of this exception.[13] Prison officials very clearly expressed to Plaintiff that they would accept his concern forms and grievances if he rewrote them to omit the disrespectful language; Defendants consistently cited the policy regarding respectful language as the key that would unlock the grievance system. These facts tend to show that Plaintiff was not thwarted from using the then-current grievance system to bring his First Amendment claims. Had Plaintiff tried to do this, and the grievance was rejected, then it might be considered a thwarting. *Id*., 548 U.S. at 87–88.

Plaintiff argues that he was "stopped" from moving through the grievance system or that his many concern forms were "killed" before complete exhaustion was accomplished each time they were returned to him because of the disrespectful language. *See* Reply, Dkt. 128. This argument seems foreclosed by United States Supreme Court precedent requiring him to use the current grievance procedures as they exist at the time of the submission to fully and properly exhaust his administrative remedies. It was not only possible but easy for Plaintiff to follow the procedures. He simply refused to do so, precluding his claims from reaching prison officials for review and remedy.

---

[13] To the extent that Plaintiff is arguing that he was "thwarted" because the grievance policy says that prisoners can resubmit disrespectful grievances only "if" they rewrite them in a respectful manner (and therefore the prisoner who refuses to rewrite a disrespectful grievance is foreclosed from using the grievance system 100% of the time), that does not seem to fit into the Supreme Court's description that the thwarting must be by machination, misrepresentation, or intimidation.

**MEMORANDUM DECISION AND ORDER - 35**

Here, it was *Plaintiff's* refusal that stopped or thwarted exhaustion. As in *Hinton*, supra, the Tenth Circuit rejected a prisoner's arguments that "[i]nmates do not have to properly complete the grievance process, and they do not have to correct deficiencies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

In another similar case where a prisoner asserted that he was excused from continuing with grievance appeals after he did not receive a response, the court reasoned that the prisoner was not excused from skipping administrative appeals and going straight to court simply because the grievance chairman told him his grievance might be delayed for months for a further investigation. *Bell v. Campbell*, 43 Fed. Appx. 841, 842-43 (6th Cir. 2002). After he received that information, Bell made no attempt to move the grievance to the next stage of grievance proceedings, which foreclosed his ability to claim that the grievance procedure was "unavailable." *Id*.

In a similar case the Ninth Circuit Court of Appeals found that knowledge plus refusal equals non-exhaustion:

> [D]espite the repeated screenings, Sapp could have no reasonable belief that administrative remedies were effectively unavailable. Kimbrell specifically instructed Sapp on how to seek medical care, and on how to appeal any denial of care, but Sapp did not follow those instructions.

*Sapp v. Kimbrell*, 623 F.3d 813, 826 (9th Cir. 2010).

Bypassing the grievance process is a serious matter that is disruptive to the entire administrative remedy system. The *Woodford* Court explained that, if prisoners desired to and were permitted to bypass "available administrative remedies," they could simply file a late grievance. Even if prison officials decided to accept the late grievances, prisoners

**MEMORANDUM DECISION AND ORDER - 36**

could still bypass the system "by violating other procedural rules until the prison administration ha[d] no alternative but to dismiss the grievance on procedural grounds." 548 U.S. at 95. "We are confident that the PLRA did not create such a toothless scheme," the *Woodford* Court concluded. *Id.*

 This strict rule was applied in *Cervantes v. Lindsey*, an Eastern District of California case, where a prisoner argued that presentation of his claims in letters to the agency that were acted upon equaled proper exhaustion, despite the availability of a prison grievance system. Those efforts did not amount to proper exhaustion. "[T]he courts cannot countenance an inmate's intentional noncompliance with the administrative appeals process or critical steps within it," concluded the court. *Id.*, No. 116CV00343BAMPC, 2017 WL 1356064, at *3 (E.D. Cal. Jan. 27, 2017) (citing *Woodford*, 548 U.S. at 95-96).

 Here, it seems Plaintiff had a simple way to bring his First Amendment issues to the attention of prison officials. The record reflects that he was instructed how to do this. Moreover, he demonstrated that he knew how to do this in the first correspondence with Morrison in the sample grievance set forth above. That grievance shows that Plaintiff knew exactly how to submit a respectful administrative form asserting that the "disrespectful language" provision of the prison grievance policy was unconstitutional. He could have done so on appeal, as Warden Christensen asked him to do, consistent with the available grievance procedures then in place.

 Finally, Plaintiff argues that the grievance system is not actually applied in the manner that the grievance policy states when a concern form or grievance form is

**MEMORANDUM DECISION AND ORDER - 37**

returned without a prison employee response. He says that Defendants have failed to provide an affidavit from someone who knows how the grievance system *really* works. The parties shall clarify and provide support facts in their upcoming briefing.

      ii.      <u>Alleged thwarting by means of threats</u>

Prison officials' refusal to process the concern forms and grievances is but one of Plaintiff's "thwarting" assertions. Plaintiff also makes various vague allegations that he was in danger of being killed if he attempted to properly exhaust the grievance system. Dkt. 133. He will need to state under oath the "who, what, where, and when" of these allegations as to each of his counter-defenses.

Plaintiff also alleges that "as a direct result of filing this lawsuit over being denied exhaustion rights, [he] was repeatedly raped, starved literally to death twice (revived), kept in a strip cell for a year, denied hygiene for a year, denied contact with family anyone for year, denied access to courts for a year, his appeal of a life sentence defaulted likely." Dkt. 133, p. 6 (verbatim). Again, Plaintiff will need to be more precise in an affidavit to support his upcoming briefing. In addition, what happened as "a direct result of filing this lawsuit" is not the same as the reasons why Plaintiff did not exhaust his administrative remedies *before* filing this lawsuit.

## SUMMARY AND CONCLUSION

The Motion for Summary Dismissal will be granted in part and denied in part without prejudice. The parties may address exhaustion under Rule 56. No additional failure-to-state-a-claim defenses will be entertained. Issues regarding whether Plaintiff's Disciplinary Offense Report # 195339 is sufficiently threatening to warrant discipline in

**MEMORANDUM DECISION AND ORDER - 38**

light of Ninth Circuit case law may be later addressed in a motion for summary judgment addressing a qualified immunity defense or the merits of that claim, but the Court will not entertain an argument that Plaintiff's causes of action centered on these facts fail to state a claim. After the parties submit their briefing on exhaustion, the Court will determine whether an evidentiary hearing will be required. The parties should identify any factual disputes specifically related to the exhaustion determination that they believe may warrant a hearing.

## ORDER

**IT IS ORDERED:**

1.  Defendants' Motion for Summary Dismissal (Dkt. 129) is GRANTED in part and DENIED without prejudice in part for the reasons set forth above.

2.  Motions for summary judgment addressing the exhaustion must be filed no later than **30 days** after entry of this Order.

3.  Plaintiff's Motion to Consider Additional Late Argument (Dkt. 134) is GRANTED to the extent that the argument has been considered.

DATED:  March 31, 2022

Honorable Raymond E. Patricco
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 39**